# WILLIAM SCHLECHT v. GEORGE SCHLECHT AND OTHERS. H. J. RICH AND OTHERS, INTERVENERS.[1]

July 9, 1926.

No. 25,186.

**Assignees of interests in contingent fees acted in good faith.**

1. S entered into a contract with an attorney, which provided that a portion of the latter's contingent fees for prosecuting certain claims should be paid to S, who was to procure evidence to substantiate the claims. Subsequently S made transfers of his interest in the fees. The transfers were attacked as being in fraud of creditors. The court found that the transferees acted in good faith and gave a sufficient consideration for what they got. *Held* that the evidence supports the findings.

**Fair consideration is one which fairly represents value of property transferred.**

2. The consideration required by § 4 of the Uniform Fraudulent Conveyance Act (G. S. 1923, § 8478), is one which fairly represents the value of the property transferred or the obligation incurred.

**Contracts not necessarily contrary to public policy.**

3. Contracts between S and two of the transferees provided that the parties were to become partners, that S should obtain claims arising out of the forest fires of October 12, 1918, and place them in the hands of attorneys for collection, and that the transferees should be paid certain percentage of whatever S received from the attorneys. *Held* that the court was not required to find that the contracts were contrary to public policy.

**Parol evidence rule inapplicable in controversy between party to instrument and stranger to it.**

4. The rule prohibiting the admission of parol evidence to vary or contradict the terms of a written instrument cannot be invoked by a stranger to the instrument and has no application in controversy between him and a party to the instrument.

[1] Reported in 209 N. W. 883.

When knowledge of transferor's insolvency does not prevent transferee becoming good-faith purchaser.

5. Knowledge of the insolvency of the transferor does not prevent a transferee from acquiring the rights of a good-faith purchaser, provided he gives a fair consideration for what he gets.

Assignment of fees to attorney for distribution to persons entitled not necessarily made to hinder creditors.

6. An attorney, employed by S and two of his transferees to collect the fees claimed by S under the contract mentioned in the first paragraph of this syllabus, took an assignment of the fees to enable him to make collection thereof. He was to distribute the money collected to the persons entitled thereto. *Held* that the court was not required to find that the assignment was made to hinder or delay creditors.

Transfer of property for improvements on homestead of transferor could not constitute legal fraud.

7. The consideration for one of the transfers was a promise by the transferee to make repairs and improvements on the homestead of S. The present enforceable obligation of the transferee to do so was a sufficient consideration, if the value of the work was not disproportionately small as compared with the value of the interest he acquired under the assignment. Such a transfer made to procure the improvement of the homestead, could not contsitute a legal fraud.

Statute inapplicable to this case.

8. Section 8472, G. S. 1923, providing for the filing of assignments of debts, has no application to any of the transfers in question.

Validity of contract not an issue at trial or to be considered on appeal.

9. No issue as to the validity of the contract mentioned in the first paragraph of the syllabus was raised in the pleadings or voluntary litigated at the trial, and the question cannot be raised for the first time on this appeal.

Appeal and Error, 3 C. J. p. 700 n. 77.
Champerty and Maintenance, 11 C. J. p. 249 n. 52 New.
Evidence, 22 C. J. p. 1292 n. 71; p. 1293 n. 72.
Fraudulent Conveyances, 27 C. J. p. 499 n. 26, 27; p. 515 n. 51; p. 527 n. 43 New; p. 528 n. 59, 68; p. 529 n. 69; p. 596 n. 36 New; p. 602 n. 79 New; p. 830 n. 17; p. 835 n. 64.

See note in 16 A. L. R. 1433.
See note in 32 L. R. A. 52; 12 R. C. L. p. 542; 2 R. C. L. Supp. p. 1452.

Action in the district court for St. Louis county by a judgment creditor of George Schlecht to set aside several transfers of Schlecht's interest in fees due him under contract, complaint alleging that the transfers were made in fraud of creditors. The case was tried before Magney, J., who ordered judgment in favor of defendants. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Arnold, Hollister & Arnold,* for appellant.

*L. C. Harris, James E. Gardner, Jr., Lathers, Hoag & Lacy, J. D. Hoogesteger* and *Fesenbeck & Yetka,* for respondents.

LEES, C.

Plaintiff, a judgment creditor of the defendant George Schlecht, brought this action to set aside several transfers of Schlecht's interest in fees due him under a contract with James Manahan and others, alleging that the transfers were made in fraud of creditors. The court denied the relief sought and plaintiff appealed from an order refusing a new trial.

After the forest fires of October 12, 1918, many of those who sustained losses organized the Northern Minnesota Fire Sufferers Association and employed attorneys to press their claims for damages. Schlecht was a member of the association. He testified that he was authorized to employ an attorney to represent the individuals who composed the association, and that on May 9, 1919, he employed Mr. Manahan. The contract of employment is in writing. It refers to the losses sustained in consequence of the fires; the organization of the association; the retainer of Mr. Manahan and his copartners; and a promise by Schlecht to superintend the work of investigating the origin of the fires. It provides that the attorneys are to advance his expenses and pay him for his services a sum equal to 25 per cent of their net fees, and that he shall make surveys of the course of the fires and "arrange the evidence procured in such investigations and surveys for said attorneys."

Schlecht transferred interests in his rights under the contract as follows: To the intervener H. J. Rich a one-half, subsequently reduced to a one-fifth interest; to each of the defendants H. I. Pinneo, L. C. Harris and Jafet Marjamaa, a one-tenth interest; and his remaining interest to the intervener Frank R. Carr. All these transfers are attacked on the ground that they were made in fraud of creditors and it is necessary to consider each separately.

## THE RICH CLAIM.

On April 5, 1920, Schlecht and Rich made a contract in form one of copartnership. It provides that Schlecht is to obtain claims "arising out of the forest fires of October 12, 1918, and place the same in the hands of competent attorneys * * * to be selected * * * by * * * parties hereto under a contract with said attorney or attorneys;" that Schlecht "shall receive as his compensation for obtaining evidence for the prosecution of said fire claims an amount equal to 1/5 (one-fifth) or more of the 25 per cent (twenty-five per cent) contingent collection fee that said fire claimants agree to pay to attorneys so selected;" that one-half of the amount so received is to be paid to Rich, who in consideration thereof is to pay $500 to Schlecht. In the summer of 1922 this agreement was modified by reducing Rich's share to one-fifth of the amount received.

The court found that Rich entered into the contract in good faith, without knowledge of the financial standing of Schlecht or of his indebtedness to plaintiff; that when the contract was made neither Schlecht nor Mr. Manahan had collected or earned any fees; that none of the fire cases were settled before November, 1921; that no fees for distribution were received before May 1, 1922; that not until that time was or could it be known that Schlecht's rights under the Manahan contract were of any value, and that Rich gave a valuable consideration for the rights he acquired.

Between October 1, 1922, and April 18, 1923, through the defendant Harris, Rich received $4,304.23. When the contract of April 5, 1920, was executed, he paid Schlecht $250 and had previously ad-

vanced $50, but the remainder of the agreed consideration had not been paid at the time of the trial. Schlecht was insolvent, and it is urged that he did not receive a fair consideration for the transfer and that it should be held fraudulent as to his creditors. Section 4 of the Uniform Fraudulent Conveyance Act (G. S. 1923, § 8478), is cited, but the act did not take effect until January 1, 1922, and whether it can be considered is doubtful to say the least. Humphrey v. McCleary, 159 Minn. 535, 198 N. W. 132.

Be that as it may, the finding that Rich gave a consideration must be sustained. A fair consideration is one which fairly represents the value of the property transferred. In the light of subsequent events Rich made a good bargain, but it must be remembered that when it was made the outcome of the fire cases was uncertain. No one could foresee that there would be a substantial profit for all of Schlecht's assignees. Rich described the transaction as a gamble, and testified in substance that he risked $500 on the chance of making a profit. Taking all the circumstances into account, a finding that the consideration was fair and adequate would have to be sustained.

It is urged that the contract between Schlecht and Rich is contrary to public policy for reasons stated in Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035, and in Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L. R. A. (N. S.) 510, 17 Ann. Cas. 687. If the two men actually agreed to become partners in the business of soliciting claims and were to share in the fees of the attorneys to whom they brought them, the contract would offend public policy and the courts would not enforce it. But Rich is not trying to compel Schlecht to perform the contract. He has received his share of the money collected. The contract is not wholly executory. Schlecht's creditors cannot attack it because perchance Rich could not have compelled Schlecht to perform it.

Aside from this, the whole argument in plaintiff's behalf proceeds on the theory that the contract bears no relation to the transactions Schlecht had with Manahan. There is no direct reference to the Manahan contract, but reference is made to claims arising out of the fires of October 12, 1918, and to their collection by attorneys. The

evidence shows that practically all the claims Schlecht procured were handled under the Manahan contract. The conduct of the parties is persuasive evidence that these were the claims to which the contract related, that the partnership referred to never existed, and that the subject matter of the contract was the money Schlecht might receive by virtue of the Manahan contract, and so the court was not required to find that the contract was in contravention of public policy.

But it is urged that the agreement speaks for itself and that parol evidence could not be received to show that in fact it is not what it appears to be. The parol evidence rule cannot be invoked by a stranger to a written instrument and has no application in a controversy between a party thereto and a stranger. Dun. Dig. § 3396. Plaintiff is not a party to the instrument and cannot invoke the rule. Moreover, most of the evidence was brought out in the cross-examination of Rich and Schlecht, so if the rule were applicable the benefit thereof was waived.

## THE PINNEO CLAIM.

The defendant Pinneo was president of the Northern Minnesota Fire Sufferers Association. He and Schlecht had dealt together for a good many years prior to August 7, 1920. On that day the two men entered into a contract identical in form with the one between Schlecht and Rich except that Pinneo was to have one-tenth of the money Schlecht might receive if the fire claims were collected. The findings are the same as those disposing of the Rich claim, with one exception. Rich actually paid $300 to Schlecht; Pinneo paid nothing. His testimony as to the consideration he gave was not consistent. He first testified that he had assisted Schlecht in settling some claims for trespasses and had loaned money to him and that the loans had been repaid. Later he produced a canceled check for $207.75, which he said represented an unpaid loan, and testified that he and another were liable as accommodation indorsers on a note of $300 which Schlecht had failed to pay. No evidence to the contrary was given at the trial. The court must have believed Pinneo. If his testimony is true, the finding that he gave a valuable consideration cannot be disturbed.

## THE MARJAMAA CLAIM.

In June, 1920, Jafet Marjamaa orally agreed to assist Schlecht in the performance of the Manahan contract, in consideration of the assignment of a one-tenth interest in the fees Schlecht might receive, and later gave up a permanent position he had with Armour & Company at a salary of $130 a month. During the next two years he gave a large portion of his time to Schlecht.

The court found that when Marjamaa was employed he had no knowledge of Schlecht's financial condition or of plaintiff's judgment, that he acted in good faith and gave a fair consideration for what he received. These findings are supported by the evidence and must be sustained.

It appears that on October 27, 1920, at a time when Marjamaa was employed by the Northern Minnesota Fire Sufferers Association as a bookkeeper, an execution issued on plaintiff's judgment was served on him as the representative of the association. It is argued that this gave him notice of Schlecht's insolvency and that he could not subsequently become a good-faith purchaser of any property rights Schlecht might have. Whether Marjamaa had been employed by Schlecht prior to October 27 is not made clear by the evidence, but there is room for an inference that he had. If so and if he had already given up his position with Armour & Company the findings in his favor cannot be overturned.

But even if he had knowledge of Schlecht's insolvency that fact would not prevent him from acquiring the rights of a good-faith purchaser, provided he had given an adequate consideration for what he got. Carson v. Hawley, 82 Minn. 204, 84 N. W. 746, Bump, Fraud. Convey. § 57; 12 R. C. L. p. 542, 27 C. J. p. 499, and the trial court was justified in finding that he had.

## THE HARRIS CLAIM.

In June, 1922, Pinneo, Rich and Schlecht consulted L. C. Harris of Duluth concerning their legal rights under the Manahan contract. Mr. Harris was retained to enforce their claims and was to be paid 10 per cent of whatever he collected without suit. It was agreed

that any money collected was to be distributed according to the several interests of the parties who had a right to share therein.

On September 9, 1922, Schlecht gave Mr. Harris an assignment of all moneys due upon the Manahan contract to enable him to collect and distribute the same. Mr. Harris makes no claim to the whole amount he collected. As to everything but his fee of 10 per cent he concedes that he received the money as trustee for the persons legally entitled to it.

The court found that his contract of employment was made in good faith and that he had no knowledge of Schlecht's indebtedness. These findings and the evidence as to the nature and extent of the services rendered amply sustain the conclusions of law respecting this claim.

The contention based on Williams v. Kemper, 99 Minn. 301, 109 N. W. 242, that as a matter of law any transfer of property made by a debtor in trust for his own use and benefit is void as to creditors, and that such was the nature of the assignment in question, cannot be sustained. The pith of the case cited is that, if in fact the debtor remains the real owner of the property, his creditors may reach and subject it to the payment of their claims.

Schlecht did have a partial interest in the fund assigned and if it had been retained it could have been reached, but before the action was brought he transferred his interest to the intervener Frank R. Carr. The validity of this transfer will be considered next, it being obvious that if it was valid Williams v. Kemper has no applicability.

## THE CARR CLAIM.

In June, 1923, the intervener Frank R. Carr sold a house and lot to Schlecht for $4,500. Schlecht had been occupying the property as Carr's tenant and after the sale occupied it as his homestead. On July 19 of the same year Carr, who was a carpenter by trade, agreed with Schlecht that he would repair and improve the property according to specifications therefor. The estimated cost was $7,000 or $8,000. In consideration thereof Schlecht assigned his remaining interest in the Manahan contract to Carr and issued an order directing Mr. Harris to pay the money to him as it was col-

lected. Carr began to do the work and at the time of the trial the value of what he had done was $3,800.

It is contended that Carr had knowledge of Schlecht's insolvency. The court's findings are to the contrary and there is sufficient evidence to support them.

The property to be improved was Schlecht's homestead. In Jacoby v. Parkland Distilling Co. 41 Minn. 227, 43 N. W. 52, it was held that a debtor who uses his nonexempt assets in securing a homestead takes nothing from his credittors which the law secures to them or in which they have any valid right, and that, even if he disposes of his property subject to execution for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. See also Small v. Anderson, 139 Minn. 292, 166 N. W. 340.

It follows that Schlecht had a legal right to assign his remaining interest in the Manahan contract to secure the making of the improvements in question and that the court did not err in upholding the assignment.

The consideration for the assignment consisted of labor and materials to be furnished in the future. Section 4 of the Uniform Fraudulent Conveyance Act (G. S. 1923, § 8478), provides that every conveyance made and every obligation incurred by a person who is insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation incurred without a fair consideration. Section 3 of the act (G. S. 1923, § 8477), defines "fair consideration" as property conveyed or an antecedent debt satisfied in exchange for the property conveyed or obligation incurred, or a present advance or antecedent debt not disproportionately small as compared with the value of the property or obligation obtained. It is argued that this language does away with the existing rule in most jurisdictions that the obligation of the transferee to render future services to a good-faith transferor gives the transferee the rights of a purchaser for value, Bump, Fraud. Convey. § 210, 27 C. J. p. 528, Adams v. Overboe, 105 Minn. 295, 117 N. W. 496, and it is suggested that at most Carr can only use

the assignment as security for the payment of his claim for work actually done. See subsection 2 of § 9 of the act.

The words "present advance," as used in the act, have not yet been defined in any case to which our attention has been called. We think an enforceable promise, made at the time of the transfer of property, is a sufficient consideration within the meaning of the act, if the thing promised is not disproportionate to the value of the thing received. The finding that Carr gave a fair consideration is therefore sustained.

It is contended that each of the transfers was an assignment of a debt which should have been filed in the manner prescribed by G. S. 1923, § 8472, and because they were not filed they are presumed to be fraudulent as to Schlecht's creditors. The contention cannot be sustained. The statute applies only to assignments of debts. Schlecht did not assign a debt owing to him. He assigned interests in a portion of the fees which might come into the hands of Mr. Manahan.

There are 91 assignments of error. All have been examined. Those deemed important have been discussed. The others are of minor importance. Prejudicial error is not disclosed by any of them.

After the appeal was submitted, Mr. Manahan's firm obtained leave of court to file a brief attacking the validity of the contract with Schlecht of May 9, 1919. Counsel for the other parties in interest have replied to the brief filed. The question was not raised in the pleadings or voluntarily litigated in the court below. Mr. Manahan's answer contains this allegation: "That at the time of the commencement of this action there was, and still is, due, under the contract with the defendant Schlecht, to the defendant Harris, as the assignee thereof, the sum of three thousand dollars ($3,-000.00) and no more." The trial court did not pass on the validity of the contract. In this situation we cannot consider the question. An appellate court can consider only such issues as have been raised by the pleadings or litigated by consent at the trial in the court below. Dun. Dig. § 384.

Order affirmed.