## STEINKE-SEIDL LUMBER COMPANY v. MAGNUS NEWDALL AND ANOTHER.[1]

June 5, 1931.

No. 28,425.

[1]Reported in 237 N. W. 194.

*Streissguth & Fordyce,* for appellant.
*Somsen, Dempsey & Flor,* for respondents.

WILSON, C. J.

Plaintiff appealed from an adverse judgment. It has two judgments against Magnus Newdall. In each debtor bought building material on credit and used the same in the improvement of an 80-acre farm, which was debtor's homestead. Upon each account, with the exception of a few items, plaintiff under art. 1, § 12, of our state constitution could have resorted to the homestead for payment of the indebtedness.

Partial payments were made upon the account; plaintiff took notes for the balance; and the notes were reduced to judgments without the record in the action showing what the consideration of the notes was and without showing that plaintiff had furnished material which had gone into the homestead.

Before the judgments were entered debtor through a third person conveyed the farm to his wife. This action is to set aside the transfer as fraudulent.

Because we find it necessary to dispose of the case as hereinafter stated, propriety does not permit us to discuss other interesting questions considered in the briefs, including these: Can a conveyance of a homestead from husband to wife be attacked as fraudulent by a creditor who has furnished materials for the improvement of the homestead prior to its transfer but who has not re-

duced his claim to judgment or sought to enforce his right by attachment or otherwise prior to the transfer? Did the plaintiff lose its rights against the homestead by taking notes for the balance of its open account from time to time and bringing action and obtaining judgment on the notes representing an indebtedness not only for items enforceable against the homestead but also for merchandise as to which the homestead would be exempt? Did such accounts lose their favored status by merging in such judgment?

If the trial court's finding that the transfer was not fraudulent, that is, that it was supported by a valuable consideration and was made without any intention to defraud, is sustained by the evidence, plaintiff has no cause of action.

The Newdall family has occupied the farm since 1919, though Magnus Newdall, the husband, spent most of his time at Minneapolis until about 1923. Since that time he has spent all of his time on the farm. Plaintiff began furnishing material about April 30, 1919. The one judgment relates to an account accruing prior to March 31, 1922, and was reduced to a note for $649 on June 14, 1923. Another book account followed, and on April 5, 1926, $400 in cash was paid upon the total of the note and book account; and a new note was given for the balance of $482. Upon this note, with interest, judgment was docketed on May 24, 1929, for $626.90.

In the summer of 1926 plaintiff furnished material for the construction of a chicken house on the farm, the cost thereof being $618.74. This account is represented by the other judgment for $742.85, entered on May 24, 1929.

From 1919 to October 6, 1925, title to the farm was in the name of Axel Newdall, a brother of Magnus Newdall, though the latter was the owner thereof and title was transferred to him on October 6, 1925. The farm was then encumbered in the sum of $4,000. This mortgage for that amount was renewed on October 30, 1925. On July 2, 1921, certain creditors attached the farm; and the attachment was not released until December 19, 1925, an indebtedness of $350 having in the meantime been paid by instalments; and the court finds that this money was loaned to her husband by Mrs.

Newdall. The court also found that Mrs. Newdall furnished and loaned to Mr. Newdall the $400 which was paid to plaintiff on April 5, 1926, and further found that she furnished and loaned to him $840 on October 30, 1925, for the payment of delinquent interest and taxes.

Plaintiff's counsel however urges that some of this money was produced from the farm. Mrs. Newdall claims that while her husband was away from 1919 to 1923 she made butter and sold it, and with $40 received therefrom she bought some calves from John Potter, which she raised with other calves, and eventually sold ten head of cattle for the $840. The evidence is that she received $350 from the estate of her father. We have not found in the evidence the source of the $400. Whether transactions between husband and wife constitute loans or gifts calls for careful consideration. Here however the transaction is attacked more upon the claim that the money used was in fact owned by the husband, but the surrounding circumstances are quite sufficient to show that it was the understanding and intention of the parties that she owned the money and loaned it to the husband. As to such transaction see McNally v. Weld, 30 Minn. 209, 14 N. W. 895; Teller v. Bishop, 8 Minn. 195 (226).

By the will of her deceased father $2,500 had been put in trust for her benefit with power in the trustee to deliver the corpus of the trust to her at his pleasure. In April, 1927, Mrs. Newdall, claiming it advisable to have a new barn on the farm, asked the trustee for the $2,500, and he agreed to let her have this fund provided the farm was put in her name. It was then agreed between Magnus Newdall and his wife that in consideration of the cancelation of the previous loans and advances (hereinbefore mentioned) made by her to him and the indebtedness created thereby in her favor and in consideration of her assuming the $4,000 mortgage and using the $2,500 trust fund for the purpose of needed improvements, the husband would convey the farm to her and she could thereafter own and have title thereto. This was done. From this money Mrs. Newdall has paid $1,104.67 to plaintiff for material for the barn.

The court found the value of the farm to be $80 per acre or $6,400. Plaintiff challenges the court's finding that the value of the farm was $80 per acre or $6,400. There were but three witnesses as to value. Defendant testified that the value was about "$80 or $90 an acre, somewhere right in there." Plaintiff's two witnesses put the value at $125 per acre. Plaintiff now suggests that such evidence does not permit a finding as low as $80 per acre. We think it does. The court has much discretion in relation to opinion evidence.

According to the court's finding, Magnus Newdall was indebted to his wife, prior to her agreeing to use the trust fund from her father's estate, for from $1,467 to $1,590. The equity in the farm was worth about $2,000. She assumed and agreed to pay the mortgage thereon. She agreed to use her money from the trust fund or a part thereof to improve the farm, including the building of a new barn which she had constructed. This was beneficial to the husband, as the farm was to continue to be his homestead. The performance of the agreement, suggested as being within the doctrine of Ryan v. Simms, 147 Minn. 98, 179 N. W. 683, is not here considered. It is sufficient to say that the satisfaction of an antecedent debt may constitute a fair consideration. G. S. 1923 (2 Mason, 1927) § 8477; Schlecht v. Schlecht, 168 Minn. 168, 176, 209 N. W. 883.

Did the parties act in bad faith? It seems not. The trial court says not. The history of Newdall's ownership discloses distress and failure. The wife was apparently devoted to duty. She sought the opportunity of applying her own trust fund to the family relief. The trustee was cautious and perhaps wisely required the title to be put in her name. She used her money for the betterment of the home and the welfare of her family. The court found that the transaction was free from an actual intention on the part of either Mr. and Mrs. Newdall to avoid the payment of a valid debt or to defraud any creditor—that was not in the mind of either of them at all.

Mrs. Newdall's testimony in some respects and particulars, but largely in relation to the unimportant matter of what the third

party received for passing the land from the husband to her, was fanciful and full of misunderstanding; but that all went to her credibility and was for the trier of fact. The record does not warrant the application of the rule that when the evidence taken as a whole is manifestly contrary to a finding it is an abuse of discretion not to grant a new trial even if there be some evidence tending to sustain the finding. Our authorities as to this rule are collated in National P. & T. Co. v. Gilkey, 182 Minn. 21, 233 N. W. 810. We are of the opinion that the findings of fact to which we have called attention are sustained by the evidence. This eliminates the consideration of the other questions as herein suggested.

Affirmed.

