This is a suit by the trustee in bankruptcy of Elizabeth I. Gautier to set aside an alleged fraudulent conveyance made by her to her husband, Peter Gautier. The husband and wife *Page 486 
answer that the land conveyed never belonged in equity to the wife and that she held the bare legal title in trust for her husband.
The premises consist of ten contiguous lots on which stands a large dwelling house, the home of the Gautiers. In 1915, Peter purchased the first three lots and took title in his own name; two years later, two more lots were deeded to Mrs. Gautier, and in 1925, the remaining five lots were conveyed to husband and wife. Mr. Gautier testifies that the consideration for all the lots was paid by him and I have no reason to believe that the fact was otherwise. In 1923, title to the five lots first purchased was put in husband and wife, and in 1928, the entire tract of ten lots was transferred, through an intermediary, to Mrs. Gautier alone. No consideration passed on these changes of title. In 1929, the Gautiers mortgaged the property for $10,000 and Mr. Gautier invested the proceeds in corporate stocks and bonds taken in the name of his wife and delivered to her and kept in her safe deposit box. Mrs. Gautier sometime thereafter began to speculate in the stock market. To secure funds for this purpose, she pledged the securities which had been bought in 1929, as well as other stock which her husband had bought earlier and had put in her name. She also borrowed money on her general credit and to this end stated that she owned the property in question. By April, 1931, Mrs. Gautier's resources were exhausted; her creditors were demanding payment and she was unable to respond. In this situation, she conveyed to her husband her equity in the land and in the stocks and bonds.
When a husband purchases land and has title put in his wife's name, or when first taking title in his own name he later transfers it to his wife, a gift to the wife is presumed.Andreas v. Andreas, 84 N.J. Eq. 375; 85 N.J. Eq. 210. Mr. Gautier attempts to rebut the presumption by showing an agreement by his wife to hold title for him. His testimony is uncertain and is unsupported by any distinterested evidence. It is contradicted by the circumstance that the securities bought with the proceeds of the mortgage were likewise *Page 487 
put in the wife's name and also by the fact that the wife represented the property to be hers. To rebut the presumption arising from the deed to the wife, the evidence must be definite and convincing. Furthermore, Gautier clothed his wife with apparent title and credit has been extended to her in reliance thereon. He cannot now say that title was not hers. I find that the property belonged to the wife.
The husband further answers that even if he did not own the land until the conveyance to him in 1931, still the deed to him was supported by a fair consideration within the meaning of the Uniform Fraudulent Conveyance act. Cum. Supp. Comp. Stat. p.647. About the middle of April, Mrs. Gautier was taken sick and sent to a hospital. Some of her creditors demanded payment of her husband. He says that until then he had no knowledge of her speculations or of her financial straits and he did not know until much later the extent of her indebtedness. He went to the hospital and told her that if she would transfer back to him the property and the securities, he would pay her debts so far as he was able to do so. This promise is the alleged consideration.
A fair consideration is defined in section 3 of the Uniform Fraudulent Conveyance act in terms which do not expressly include a covenant or promise on the part of the grantee: "Fair consideration is given for property, or obligation (a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." The supreme court of Minnesota, inSchlecht v. Schlecht, 168 Minn. 168; 209 N.W. Rep. 883, held that an enforceable promise made at the time of the transfer is a consideration within the meaning of the act. I will follow that construction of the act.
In order that a promise may be enforceable, it must be certain.Ans. Cont. 108. What is the extent of the liability that Mr. Gautier assumed? Can the trustee in bankruptcy pursue him until all Mrs. Gautier's then existing creditors are fully paid? When I put this question to his counsel, he replied that Mr. Gautier himself is the judge of how far he is able to pay his wife's creditors. Such, I think, was the intent *Page 488 
when the promise was made. His obligation was too vague to be enforceable.
"A promise that was originally too indefinite may by performance become definite." 1 Williston on Contracts 223. On June 30th, 1931, Gautier satisfied a mortgage for $5,000 on the property, but he did so out of the proceeds of new $7,000 mortgage which he placed on the property. Also, in May or early June, he took up collateral notes of his wife for $14,190, and in their stead gave his own notes, endorsed by his wife and secured mainly by the same collateral. These notes he eventually paid off; in part out of loans by his wife's aunt, the defendant Mrs. Dickmann, to whom he gave a mortgage on the real estate which, for reasons stated below, will stand at $9,595. Lastly, Mr. Gautier paid about $2,500 to unsecured creditors of his wife. To sum up, he paid obligations of Mrs. Gautier to the amount of some $21,690, and on the other side increased the liens on her land by $16,595. For the difference, say, $5,000 to $5,500, he has all the collateral which belonged to his wife. In the spring of 1931, the collateral was worth considerable more than that difference. These transactions by Mr. Gautier may be used to measure and define his undertaking to pay his wife's debts to the extent of his ability. He has applied none of his own estate to that end. He has not given a fair consideration for the conveyance, and so it must be set aside as against existing creditors and their representative, the complainant trustee in bankruptcy.
Complainant does not challenge the mortgage of $7,000 to the trust company, but he does attack Mrs. Dickmann's mortgage, created January 30th, 1932, nearly two months after the petition in bankruptcy. I find that Mrs. Dickmann had no knowledge or notice of the lack of consideration for the deed from Mrs. Gautier to Peter Gautier, and therefore no notice of the equity of complainant, although she did know of Mrs. Gautier's bankruptcy. She had no knowledge of the fraud. As to the consideration for the mortgage: In 1930, and March, 1931, Mrs. Dickmann loaned Mrs. Gautier $1,278. From September, 1931, to the middle of January, she advanced *Page 489 
$4,000 to Mr. Gautier, as I interpret the evidence. And she loaned him $500 two days, and $5,095 one day, before the date of the mortgage. The mortgage was given as security for all these loans. Besides taking the mortgage on the land, Mrs. Dickmann took over the collateral from the banks and holds it as additional security. Although the last $5,595 loaned by Mrs. Dickmann was paid to Gautier shortly before the execution and delivery of the mortgage, the advance was made in reliance on his promise to give her the mortgage; the loan and the mortgage constituted a single transaction. To this extent, the mortgage should be regarded as security for a present loan; to the further extent of $4,000 as security for an antecedent debt of Mr. Gautier.
Counsel for complainant cites DeWitt v. VanSickle, 29 N.J. Eq. 209,
and 27 C.J. 698, as authority for the proposition that one who takes a mortgage from a fraudulent grantee can hold his security against the defrauded creditor, only when the mortgagee pays a present consideration for the mortgage and only to the amount of such consideration. But since the enactment of the Uniform Fraudulent Conveyance act, the law has been otherwise:
Sec. 9. "Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (b) Disregard the conveyance and attach or levy execution upon the property conveyed."
A fair consideration is defined in section 3, and may include an antecedent debt. Trust Co. v. Garfinkel, 107 N.J. Eq. 20.
But by antecedent debt is meant an enforceable obligation of the mortgagor and not a debt of a third party. Seymour v. Wilson,19 N.Y. 417. The United States Bankruptcy act, especially section 702, does not give to complainant trustee a right to avoid transfers as against a third party who is protected by the law of the state. The federal statute merely gives to the trustee the standing and title of a creditor. *Page 490 In re Mullen, 101 Fed. Rep. 413; Holbrook v. Trust Co.,220 Mass. 150; 107 N.E. Rep. 665; Woodman v. Butterfield, 116 Me. 241; 101 Atl. Rep. 25. Mrs. Dickmann may hold her mortgage as security for $9,595 with interest. As already mentioned, she holds as securities both the land and the stocks and bonds. The latter are owned by her debtor, Mr. Gautier, or at least his title has not been attacked. The former is owned in equity by the complainant. She will therefore be required to exhaust the stocks and bonds on which she has a lien (for the entire $10,873) before she resorts to the land; or if counsel can agree on the value of the collateral first chargeable, Mrs. Dickmann can take the collateral at that figure and thus the amount of her lien on the land will be ascertained. *Page 491