**FREITAG v. THE STRAND OF ATLANTIC CITY, Inc., et al.**

**No. 10729.**

United States Court of Appeals Third Circuit.

Argued Feb. 3, 1953.

Decided June 30, 1953.

Before BIGGS, Chief Judge, and GOOD-RICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal by William L. Taub, counterclaimant, from a judgment entered by the District Court for the District of New Jersey awarding to the United States, intervenor, a fund under the jurisdiction of the court as a result of settlement of the initial phase of this litigation.

Prior to 1945, Abraham Freitag, originally designated as plaintiff in this suit, was the owner of a stock certificate and note evidencing his interest in The Strand of Atlantic City, Inc., the original corporate defendant here. The note was payable "to Abraham Freitag only". The stock certificate had endorsed on it the statement, "The shares represented by this certificate are transferable only pursuant to the terms of a written agreement dated June 20, 1944". This stock certificate and note came into the physical possession of the Collector of Internal Revenue for the First Collection District of New York as a result of tax liens filed against Freitag in April, 1945, to secure indebtedness greatly in excess of any possible value the documents might represent.

In the spring of 1950 there were negotiations for the release of these documents in the course of which it was represented to the Internal Revenue Bureau that unless suit were brought promptly the government's security interest would become worthless by the running of the Statute of Limitations as to the note, and by laches as to any wrong which might have been done to shareholders by those who managed the affairs of the corporation. An agreement was reached pursuant to which the Collector gave up possession of the documents so that suit could be brought on them, received $2500, and agreed to accept as full consideration for discharge of the lien that sum plus 25% of any recovery that might be had on the claims represented. A Certificate of Discharge of the lien was issued incorporating the terms of the agreement. The record shows Taub as the moving party in these negotiations, but it is disputed whether the Bureau was advised that any-

Kenneth Dobson Miller, Washington, D. C. (William L. Taub, New York City, on the brief), for appellant.

Alexander Feinberg, Asst. U. S. Atty. for New Jersey, Camden, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., on the brief), for appellees.

one other than Freitag had an interest in the stock and note.

Subsequently this suit was brought in the name of Abraham Freitag, a citizen of New York, in the District Court for the District of New Jersey against The Strand of Atlantic City, Inc., a New Jersey corporation, and Emanuel and Evelyn Solomon, citizens of New Jersey. The complaint alleged that Freitag was a stockholder and creditor of defendant corporation and that the individual defendants had used their positions as officers and directors of the corporation to impair his rights as a stockholder and to endanger his and others' rights as creditors. The complaint sought immediate appointment of a receiver to protect all whose interests might appear. The United States intervened, alleging by virtue of the terms of the Certificate of Discharge a 25% interest in any recovery.

Before appointment of a receiver or hearing on the merits of the complaint, a settlement was reached under which the stock certificate and note in Freitag's name were surrendered to the Solomons and the corporation, and they in turn paid $75,000 to the Camden Trust Co., as escrow agent, to hold until an agreement could be reached among all who might be interested in the fund or until the District Court should order disposition of it. Pursuant to stipulation of the parties, the District Court entered an order on October 30, 1950, dismissing the suit as to defendant corporation and defendants Solomon but preserving the rights of all others as to each other.

The United States then amended its petition in intervention and claimed, in addition to the 25% previously claimed, the balance of the fund in partial satisfaction of a criminal fine of $100,000 which had been levied against Freitag pursuant to a judgment entered in the District Court for the Southern District of New York on May 31, 1945 and more recently filed in the District Court for the District of New Jersey for the purpose of making its

lien effective there. Taub answered the government's petition, admitting the government's right to 25% of the fund, but denying its right to the balance.[1] He alleged that Freitag was not the owner of the property, which the fund represented, on October 20, 1950, the date on which the criminal judgment was filed in the District Court for the District of New Jersey, because the stock certificate and note had been assigned by Freitag to him on November 30, 1949. On the basis of this assignment Taub claimed the balance of the fund above the 25% admittedly due the government. In answer to Taub's claim, the government alleged that the assignment from Freitag to Taub was "collusive, fraudulent, and without true consideration".

After trial the District Court rendered an oral opinion in which it found that the Certificate of Discharge was obtained by fraud and was therefore null and void, so that the tax lien still existed as to the stock and note and therefore as to the fund which they had produced. The court found further that the assignment from Freitag to Taub had been in fraud of creditors and was void, and that the filing of the criminal judgment in the District of New Jersey created a valid lien against Freitag's property and, hence, against the fund. Upon these grounds the court ordered the entire fund paid into court by the escrow agent, to be held for a period subject to claims for fees and costs, and then to be paid over to the United States. From this judgment, Taub has appealed.

■ If the first ground for the District Court's decision is sustained the case is at an end, for the original tax lien, if still in effect, will exhaust the fund. The stock certificate and note and the claim they represented were released from this lien by a Certificate of Discharge of Property from Federal Tax Lien, issued under Section 3674(b) of the Internal Revenue Code, 26 U.S.C. § 3674(b), and signed by the Collector of Internal Revenue for the First Collection District of New York, on April

---

1. Taub also says he is entitled to get back the $2500 originally paid but the Certificate of Discharge clearly entitles the government to receive and retain both that sum and 25% of any subsequent recovery.

25, 1950. Section 3675 of the Internal Revenue Code, 26 U.S.C. § 3675, provides that "A certificate of release or of partial discharge issued under this subchapter shall be held conclusive that the lien upon the property covered by the certificate is extinguished." This court has held that this peremptory and sweeping statutory language can be avoided only by a showing of actual fraud in the procurement of the discharge. In re Bowen, 1943, 138 F.2d 22; In re Bowen, 1945, 151 F.2d 690. The decisive question, therefore, is whether a finding of such fraud can be sustained on the present record.

■ We note at the outset that neither in pleading nor otherwise has the government at any time founded a formal claim to the entire fund on the theory that the discharge is voidable. However, the government, in its brief here, urges that under Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C., we should treat this issue as having been raised in the court below. Rule 15(b) provides in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

Before we can sustain the finding of the District Court, we must therefore find that in substance there has been a trial of the issue and that this procedure has been authorized by express or implied consent of the parties. Nowhere in the record does there appear any expression by Taub or his counsel acquiescing to the trial of the issue. And we find it difficult to determine on the record whether the parties even regarded this issue as a matter then being litigated.

Cases in which it has been held that an issue was tried by implied consent proceed in the main on one or more of the following bases: both parties introduced evidence on the issue, or evidence was introduced by one party and no objection was raised by the other, or the "issue" not raised by the pleadings was in reality only an unanticipated line of proof which served to establish a duly pleaded ultimate fact.[2] Here, the government offered no evidence of fraud in the procurement of the Certificate of Discharge. The only witness who testified in any way in regard to the circumstances of the release was Taub. On cross-examination and questioning by the court, he testified that he had participated in the negotiations leading to the issuance of the Certificate, and admitted that he had not informed the government officials in writing prior to the actual issuance of the Certificate that he was the assignee of Freitag's interest. He also testified that he had orally informed a Mr. Titman of the Internal Revenue Bureau, who was the principal negotiator on behalf of the government, that he had received an assignment of Freitag's interest. There was offered in evidence a document, signed by Abraham Freitag, drafted as a power of attorney in usual form, except for reference within the instrument to "this assignment" and a statement that the power of attorney is granted "for the sole use and benefit of William L. Taub and at his own cost and expense", to prosecute and settle any claims based on the stock certificate and note. Taub testified that this instrument was prepared at the request of Titman and submitted to the Collector in New York at the time the Certificate of Discharge was issued.[3] The trial court ob-

---

2. See, e. g., Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 1945, 147 F.2d 500; Pasquel v. Owen, 8 Cir., 1950, 186 F.2d 263; El Paso Electric Co. v. Surrency, 10 Cir., 1948, 169 F.2d 444.

3. There was colloquy among counsel and the court at various times concerning Mr. Titman's availability as a witness. Counsel for Taub indicated that they would like to have him but were unable to secure the necessary administrative clearances to enable him to appear. If Titman would testify to facts tending to establish fraud it would be expected that

viously considered Taub to be an extremely unreliable witness. And to that court the granting of the Certificate of Discharge on the terms allowed here may have seemed such a dubious exercise of discretion as to suggest strongly either misrepresentation or connivance. But suspicion is not proof. The doubts which may have been raised in the judge's mind by his own examination and counsel's cross-examination of Taub, together with the court's conviction that Taub's self-serving explanations were untrustworthy would not, without more, establish fraud or even inform the parties that an unpleaded issue of fraud was now being tried. It is not clear to us that the parties ever addressed themselves to that issue, particularly in view of the unequivocal statutory provision that the Certificate is "conclusive" of the extinguishment of the lien. Certainly, there was no such clear framing of the issue and plain proof as is desirable on so grave a matter and necessary to dislodge the Certificate from the commanding position in which the statute has placed it.

■ But in view of the strong impression of concealed wrongdoing created in the mind of the trial judge and expressed orally after actually hearing the witnesses, we think that this issue of actual fraud should be pleaded and tried fully, if the government wishes to press it. Accordingly, the findings and judgment as to this issue will be vacated, and the cause remanded to the District Court so as to permit the government to amend its pleadings to raise properly the issue of invalidity

of the Certificate of Discharge by reason of its having been obtained by fraud and to support that claim by proof if it can and will.

■ But even if the Certificate of Discharge stands, there remains the separate question of the validity of the earlier assignment from Freitag to Taub. The government pleaded that this assignment was "collusive, fraudulent, and without true consideration". At the trial, Taub introduced into evidence an agreement to assign, dated at New York on November 30, 1949 and signed by Freitag and Taub; an assignment signed by Freitag and witnessed at the same place and on the same date, and the power of attorney referred to above, signed by Freitag and sworn to before a notary public on April 19, 1950 in New York. Introduction of these documents established prima facie Taub's asserted right and status as assignee.[4]

■ The burden of proof was then on the government to controvert this showing or to establish that the transaction was in fraud of creditors. The government did not attempt to deny the execution of the documents. Nor did it produce any witnesses or data to support its claim that the assignment was in fraud of creditors. Instead, it sought to establish this fact by cross-examination of Taub's witnesses and by argument that inferences favorable to its position could be drawn from all that Taub submitted.

■ Section 7 of the Uniform Fraudulent Conveyance Act as in force both in New York and in New Jersey [5] provides:

the government would exercise all diligence to obtain his testimony as part of its case. But apparently the government did not attempt to have him appear.

4. The government makes a point that both the note and the stock certificate were "unassignable" by their own terms. But we are not inquiring whether the corporation might have refused to accept Taub as successor to Freitag's interest. Whatever may have been the rights as between the corporation and the other stockholders on the one hand, and the purported assignor and/or the purported assignee on the other, we do not think

that the terms of the instruments in any way affected the rights inter se of assignor and assignee or of those standing in the shoes of either. Cf. Restatement, Contracts, § 176 (1932). And that is all that matters here.

5. No choice of law problem in connection with the validity of the assignment appears to have been raised or considered below. The assignment covered stock and a note evidencing the holder's interest in a New Jersey corporation. Apparently the assignment took place in New York. No third state seems to be concerned in any substantial way. In both New York and New Jersey, rules

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors."

Suspicion of actual fraud may have been raised by unfavorable impression of what Taub said and tendered but we have found in the record no substantial basis for an affirmative finding of fraudulent intent. In the absence of such proof we think particularly apt the observations of the Court of Appeals for the Second Circuit in Feist v. Druckerman, 1934, 70 F.2d 333, 334:

"In view of the false statement of [the insolvent] as to * * * a vital matter * * * and in view also of the transfer of property to his wife and son * * *, all within six months of the filing of the petition in bankruptcy, there is some reason to hold that an inference of 'actual intent' to defraud creditors 'as distinguished from intent presumed in law,' should be drawn and that accordingly the conveyance should be set aside under the provisions of section 276 of the New York Debtor and Creditor Law [Uniform Fraudulent Conveyance Act, § 7]. We are, however, inclined to think that the testimony when taken alone was not sufficient to prove actual fraud, and that a cause of action under section 276 of the New York Debtor and Creditor Law must fail. * * *

"It seems to us reasonably clear that, if there is not evidence sufficient in itself to show actual intent to defraud, a conveyance cannot be set aside under section 276."

and principles dispositive of the challenge to this assignment are codified in identical language in the Uniform Fraudulent Conveyance Act. N.Y. McKinney's Consol.Laws, c. 12 Debtor and Creditor Law, §§ 270–281 and 25 N.J.Stat.Ann. 25:2–7 to 19. No conflicting interpretations of statutory language are involved. Accordingly, it is not necessary now to decide whether it is New York or New Jersey law which determines any aspect of

But Section 4 of the Uniform Fraudulent Conveyance Act provides another possible way of establishing the government's position:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

It seems clear that Freitag was insolvent at the time of the assignment. Therefore, the only question is whether the conveyance was made "without a fair consideration." Section 3 of the Act defines "fair consideration" as follows:

"Fair consideration is given for property or obligation: a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied * * *."

In the District Court and in argument here some point was made that the assignment itself recited as consideration the payment of $1 from Taub to Freitag. But clearly this was not meant to be and was not in fact the sole consideration for the assignment.[6] The inclusion of the traditional nominal consideration may add nothing to the legal effect of the agreement, but it certainly does not detract. The agreement recites that it is in consideration of "one dollar in hand paid" and in consideration of "mutual promises, covenants, and agreements herein made and to be kept." After this recitation the agreement is divided into six paragraphs. Paragraphs 1, 2, and 5 are promises on the part of Freitag to transfer his rights in and claims against The Strand to Taub and to take whatever

the effectiveness of the attempted substitution of Taub for Freitag as the beneficial owner of stock and note.

6. Thus cases which hold that a nominal consideration is not a fair consideration within the meaning of section 3 of the Act do not dispose of the issue here. Cf., e.g., Berndt v. Berndt, N.Y.Sup.Ct. 1948, 192 Misc. 57, 79 N.Y.S.2d 143.

further steps are necessary to assure good title, and a statement of Taub's right to any recovery against The Strand. Paragraph 3 is an undertaking by Taub to "use his best efforts to and [sic] adjust and make possible an adjustment of the income tax lien and tax liability of" Freitag. Paragraph 4 is an undertaking by Taub to assert all claims against The Strand and to secure their adjustment. Paragraph 6 is an undertaking by Taub to advance all fees and expenses necessary in connection with the adjustment of the income tax liability of Freitag and in connection with prosecution of the claims against The Strand.

Were the promises of Taub fair consideration for the assignment by Freitag? An executory promise may be very valuable. It may be "property" and "fair consideration" within the meaning of the Act.[7] Moreover, the bona fides of the exchange must be determined in the light of the value of the property conveyed as well as the promise for which it was exchanged. Stokes Coal Co. v. Garguilo, 1938, 255 App. Div. 281, 7 N.Y.S.2d 414. We turn then to a comparison of the value of what Freitag conveyed with the value of Taub's undertakings.

Freitag was hopelessly insolvent at the time of the assignment; apparently he had no funds with which to prosecute whatever claims he might have against The Strand; delay for too long might make them completely worthless. In addition there seems to have been substantial doubt how much the claims were worth on the merits, and how much of any judgment obtained would prove collectible. But even without regard to all that, the documents upon which the claims depended, the stock certificate and note, were in the hands of the Collector of Internal Revenue, subject to a lien for a sum greatly in excess of any recovery which could reasonably be expected. The value of the equity interest in the hands of Freitag, or anyone else, was zero, so long as the tax lien continued in full effect. Freitag had no interest in the claims, as a practical matter, except insofar as their proceeds might reduce the claim of the government against him.

What more then than he obtained could Freitag have exacted as the price of his claims? Surely an obligation by Taub to "adjust" rather than merely to "use his best efforts to adjust" Freitag's tax difficulties would have been beyond the power of a private individual to undertake. Taub's promise to use his best efforts to secure adjustment of Freitag's tax liabilities, and his undertaking to expend his own funds in so doing cannot be said to be unfair consideration for the equity in claims whose speculative value could not be realized without first obtaining release from a lien which greatly exceeded their total possible worth.[8] The fact that it was necessary for Taub to pay $2500 in cash out of his own funds to the Bureau to get release of the documents emphasizes the substantiality of his undertakings and of his efforts to discharge them.

The vice in a "fraudulent conveyance" is that it permits a debtor to deplete his estate to the detriment of creditors. The assignment from Freitag to Taub did not deplete Freitag's estate in any practical sense. Freitag's theoretical equity was worthless in his hands. The Bureau was in a position to exact as much as the documents were worth and more before giving them up. It did exact $2500 and the contingent promise of more. Perhaps the Collector did not put the price of release high enough, in terms of cash or in terms of contingent interest in possible future recovery, but that is beside the point. The Collector's action affords no basis for im--

7. Schlecht v. Schlecht, 1926, 168 Minn. 168, 209 N.W. 883; cf. Osgood v. Massachusetts Mutual Life Insurance Co., 1944, 93 N.H. 160, 37 A.2d 12, 154 A.L.R. 724; see Hollander v. Gautier, 1933, 114 N.J.Eq. 485, 487, 168 A. 860, 861. But cf. Village of West Milwaukee v. Bergstrom Mfg. Co., 1943, 242 Wis. 137, 7 N.W.2d 587.

8. That hindsight reveals that Taub was successful in obtaining release from that lien and a favorable settlement of the claims cannot affect the valuation of the equity in those claims at the time of their conveyance. Cf. Halsey v. Winant, 1932, 258 N.Y. 512, 180 N.E. 253; Schlecht v. Schlecht, 1926, 168 Minn. 168, 209 N.W. 883.

puting "unfairness" retroactively in the earlier transaction between Freitag and Taub. Indeed, it is the government's theory that the Collector did not even know that Taub had bought Freitag's claim.

The finding and the decision of the court below that the assignment from Freitag to Taub was invalid as in fraud of creditors are not supported by the record and must be reversed. In this posture of the case the questions raised and argued concerning the lien of the criminal judgment against Freitag become irrelevant. For the attempt to make that judgment a lien in New Jersey came after the assignment to Taub.

The cause will be remanded to the District Court with directions to that court to allow a reasonable time to the government to amend its pleadings to allege that the Certificate of Discharge was obtained by fraud, if it shall be so advised. If the government does not plead and prove this, judgment shall be entered in favor of the United States for 25% of the fund, and judgment in favor of Taub for the balance, subject to any and all costs, fees and allowances.