RUNNING, Executrix of the estate of Orrin Running, substituted as plaintiff for the Bank of Cameron, Respondent, v. WIDDES and wife, Appellants.*

No. 151. Argued September 7, 1971.—Decided October 5, 1971.
(Also reported in 190 N. W. 2d 169.)

---

* Motion for rehearing denied, with costs, on November 30, 1971.

For the appellants there was a brief by *Sheridan, Sheridan & Mellick* of Waukon, Iowa, and by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *James U. Mellick* of Waukon, Iowa, and *Roger L. Imes* of La Crosse.

For the respondent there was a brief and oral argument by *Edward J. Coe* of Rice Lake.

HALLOWS, C. J. Widdes' first argument contends Running is not a proper party or a creditor under sec. 242.01 (3), Stats.,[1] because when he purchased the judgment from the bank the judgment was extinguished. We think not. There was no extinguishment of the judgment debt because Running as guarantor purchased the judgment against his codefendant Widdes, the principal maker. A guarantor is entitled to recovery against the principal and he may proceed by way of purchase and assignment of the principal debt as well as by payment of the judgment and by subrogation. Nor do we think Running is disqualified for relief under sec. 242.09 (1),[2] because he failed to take judgment over against the Widdes' in the bank suit. This action resulted in a judgment on a cognovit note. While Running might, in an ordinary lawsuit, have sought relief against Widdes he is not bound by waiver in a cognovit action if he does not do so. Running succeeds to the remedies of the judgment creditor and thus qualifies as a creditor seeking relief from a fraudulent conveyance under sec. 242.09 (1) which section has been held to require a general creditor seeking relief for fraudulent convey-

---

[1] "242.01 Definitions. . . . (3) 'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

[2] "242.09 Remedies of creditors. (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (b) Disregard the conveyance and attach or levy execution upon the property conveyed."

ance to reduce his claim to judgment. *Lipman v. Manger* (1924), 185 Wis. 63, 200 N. W. 663.

The Widdes' argue the conveyances were for a fair consideration and therefore valid. A conveyance made by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. Sec. 242.04, Stats. The trial court found the reasonable market value of the three parcels of real estate to be $22,000 and the equalized market value, according to the records of the Barron county treasurer, to be $27,222.13. Against these properties there was mortgage indebtedness totaling $13,939.19. At the most, the equity in the properties was approximately $14,000; and since Gerald Widdes had no other assets at the time of the conveyances and had debts totaling over $33,000, the court found him to be insolvent. This finding is not challenged on appeal and consequently, the question is whether the conveyances were made for a fair consideration.

The primary consideration given by Averle H. Widdes was an oral promise to pay the debts of her husband. We think the trial court correctly ruled that this promise, being executory when given, was not a fair consideration under sec. 242.03, Stats.[3] Fair consideration consists of three elements: (1) Fair equivalent, (2) good faith of the grantee, and (3) property conveyed. While there is a conflict in authorities over what qualifies as the third element constituting a fair consideration under

[3] "242.03 **Fair consideration defined.** Fair consideration is given for property, or obligation, (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

the Uniform Fraudulent Conveyance Act, this state at an early date in *Angers v. Sabatinelli* (1940), 235 Wis. 422, 293 N. W. 173, held an executory promise did not constitute "property is conveyed" under sec. 242.03. We are asked to reconsider this case and overrule it. We have reconsidered the problem and believe the case was correctly decided. It put finality and completeness in the concept of fair consideration by construing "property is conveyed" to mean completed, past tense—with nothing left for the grantee to do. The consideration and the transfer must be concurrent and simultaneous and if the consideration is in the form of a negotiable promissory note, such instrument must have been negotiated to a holder in due course before the action is brought to set aside the conveyance.

The purpose of the Uniform Fraudulent Conveyance Act is primarily for the benefit of creditors, not grantees. It is a remedial statute and a liberal construction should be given it to accomplish its purpose of giving speedy relief against a fraudulent debtor. *Lutherville Supply v. Dimon* (1963), 232 Md. 195, 192 Atl. 2d 496; *Lind v. O. N. Johnson Co.* (1938), 204 Minn. 30, 282 N. W. 661; *American Surety Co. v. Conner* (1928), 225 App. Div. 137, 232 N. Y. Supp. 94. By the operation of this action, creditors are able to get what is due them despite the efforts of a debtor to elude payment by putting his property, which is available for payment of his debts beyond the reach of his creditors. *Kummet v. Thielen* (1941), 210 Minn. 302, 298 N. W. 245; *Hearn 45 St. Corp. v. Jano* (1940), 283 N. Y. 139, 27 N. E. 2d 814, 128 A. L. R. 1285.

We think the definition of "fair consideration" in the act should be given a construction which will attain these ends. In deciding *Angers*, this court overruled *Farmers Exchange Bank v. Oneida Mfg. Co.* (1930), 202 Wis. 266, 232 N. W. 536, which expressed the view an executory promise could constitute "property conveyed." The

rule of the *Angers Case* was followed in *West Milwaukee v. Bergstrom Mfg. Co.* (1943), 242 Wis. 137, 7 N. W. 2d 587, without citation.

We are aware of the cases to the contrary, *i.e.*, *Freitag v. The Strand of Atlantic City* (3d Cir. 1953), 205 Fed. 2d 778; *Osgood v. Insurance Co.* (1944), 93 N. H. 160, 37 Atl. 2d 12; and *Schlecht v. Schlecht* (1926), 168 Minn. 168, 209 N. W. 883. *Freitag* involved a promise of future personal services. In *Osgood* the insolvent purchased an annuity. In *Schlecht* that statute called for a "present advance" and the court found a promise to repair property to be enforceable and sufficient. Our reading of these opinions and consideration of the arguments advanced do not convince us the cases are correctly decided if the purposes of the Uniform Fraudulent Conveyance Act is to be attained.

It is argued Averle H. Widdes had paid approximately $1,400 of her husband's debts at the time of the commencement of the suit and within two years of the date of the promise she had discharged a large portion of his debts. This doctrine of "subsequent performance" to bolster up an executory promise was recognized in *Cherokee Auto Co. v. Stratton* (1930), 210 Iowa 1236, 232 N. W. 646, but seemingly denied in *Hollander v. Gautier* (1933), 114 N. J. Eq. 485, 168 Atl. 860, where the money used to pay off the debts was derived in fact from the property conveyed. While the trial court indicated part of the subsequent payments made by Averle H. Widdes was derived from the income of the parcels conveyed, we deem the performance subsequent to the commencement of the action under sec. 242.09, Stats., to be immaterial. Furthermore, part of the definition of "fair consideration" in sec. 242.03 is "good faith." The trial court found the Widdes' were in fact motivated by an intent to hinder, delay, and defraud the creditors of Gerald Widdes. The evidence sustains this finding; and

consequently, the subsequent performance of Averle H. Widdes does not place her in any equitable position either to establish fair consideration or to protect her with a lien to the extent of the payments prior or subsequent to the conveyances.

This is not a case where a grantee innocently makes payments upon the purchase price prior to learning of the fraudulent purpose of the conveyance. In such a case, sec. 242.09 (2), Stats., gives such a purchaser a lien upon the premises for the security of such payments. This was the rule before the adoption of the Uniform Fraudulent Conveyance Act in Wisconsin and thereafter. *See Angers v. Sabatinelli, supra,* at page 435. While even a guilty grantee may have a lien for maintenance and preservation of property from tax and other liens as a condition for relief to a creditor seeking to set aside the conveyance, it would seem the rule as applied to a guilty grantee does not extend to payments which were derived from income from the property. A guilty grantee may recover only the payments for the essential maintenance and preservation of the property made out of the grantee's pocket and before the commencement of an action by creditors to set aside the conveyance.

In granting judgment, the trial court allowed $1,000 attorney's fees to Running; this award was included in the judgment signed by the trial judge. It is argued there is no statutory authority for the awarding of such a fee in sec. 271.04, Stats., which allows as costs only the sum of $100 when the amount involved is $1,000 or more. Running argues this question is not before this court because no objection was made to the trial court within ten days of the taxation of costs by the clerk as required under sec. 271.10 (4). However, the clerk of the court did not tax costs; the procedure under sec. 271.10 (4) was not followed. The judgment itself awarded the $1,000 fee. We think the question is prop-

erly before us and the court was in error in allowing $1,000 attorney's fees to the plaintiff; this should be reduced to $100, and the judgment should be accordingly modified.

*By the Court.*—That part of the judgment allowing plaintiff $1,000 attorney's fees is modified to allow $100, and the judgment, as so modified, is affirmed; no costs to either party.