AMERICAN SURETY COMPANY OF NEW YORK, Appellant, *v.* WALLACE L. CONNER, Defendant, Impleaded with BESSIE FARJEON BARKER CONNER, Now Known as BESSIE FARJEON BARKER, Respondent.*

Second Department, December 21, 1928.

* Revd., 251 N. Y. 1.

*Gerald Morrell* [*James E. Finegan* and *George L. Naught* of counsel], for the appellant.

*Louis P. Eisner* [*Eugene J. Raphael* with him on the brief], for the respondent.

YOUNG, J. The action is brought by plaintiff, as assignee of the Sumner Savings Bank, for an accounting and to impress a trust upon certain real and personal property and to have such property declared that of the plaintiff.

The defendant Wallace L. Conner, in 1924 and prior thereto, was an officer and the manager of the Sumner Savings Bank and, as such, received moneys coming into the bank from depositors and attended to their payment to the depositors on withdrawals. Between June 30, 1910, and August 8, 1924, he carried on a systematic course of robbery, appropriating to himself cash deposited with the bank and withdrawing from the bank cash on forged drafts. During that period he took from the bank, over and above moneys returned by him to it, $103,312.77, and appropriated the same to his own use. In October, 1917, he purchased certain real property in Amityville and received a deed of conveyance thereof in fee simple in his own name. This is the real property involved in this action. The defendant Bessie Farjeon Barker was the wife of one Barker. On July 2, 1924, she procured a divorce from Barker. On January 21, 1924, the defendant Conner prepared a deed from himself to the defendant Bessie Barker of the real property in question and recorded it on January 23, 1924. On July 8, 1924, she married the defendant Conner, and on the night of the marriage he gave her certain jewelry which is described in the complaint in this action. The consideration for this conveyance and transfer was her promise of marriage to Conner. She paid no monetary consideration therefor. Thereafter, Conner's wrongdoing was discovered and he was indicted, pleaded guilty, and was sentenced to State prison.

Thereafter, Bessie Barker began an action for the annulment of her marriage to Conner on the ground of false representation, fraud and deceit. A decree annulling the marriage was entered prior to the commencement of this action. She is now the owner of record of the real property in question under the deed from Conner, above mentioned, and she has in her possession and is holding the jewelry in question which she received from him.

The Sumner Savings Bank assigned the causes of action against Conner to the Lenox Savings Bank, and that bank assigned them to plaintiff.

The plaintiff then brought this action in equity, alleging in substance that the real and personal property were bought with moneys stolen from the Sumner Savings Bank by Conner, and that he had sought to put the property beyond the reach of the bank and his creditors and gave and conveyed the same to the defendant Bessie Barker without consideration, and that she knew or should have known that the property was so purchased and paid for with the stolen money. An accounting was demanded in the complaint and that the defendant Barker be directed to convey the real property to plaintiff and to turn over the personal property to it.

Much of the testimony taken on the trial was given by the defendant Conner, who was called as a witness for plaintiff. He testified in substance that the stolen money went into the purchase of the real and personal property in question. On cross-examination, however, he gave contradictory testimony and the trial court refused to believe him and found that plaintiff had failed to prove that all or any part of this money paid for the purchase of the property in dispute. There was no proof that the defendant Barker knew that Conner was stealing money from the bank, and it was found by the court that she did not know of that fact and had no notice of the theft at the time of the delivery of the deed and the jewelry to her.

The trial court dismissed the complaint upon the merits as against the defendant Barker, and the plaintiff has appealed to this court.

The theory of the learned Special Term in deciding this case was that this property was conveyed and transferred to the defendant Barker in consideration of her promise to marry the defendant Conner, which was a good and sufficient consideration to support the conveyance. Appellant asserts, however, that, when this marriage was annulled, at her suit, the consideration for the con-

veyance entirely failed, and that she was bound to return the property to the defendant Conner, and it, therefore, became subject to plaintiff's claim as a creditor.

· Of course, it is well settled that a promise of marriage is a good consideration for the conveyance of property, but whether, in view of the facts and circumstances shown in this case, such consideration failed upon the annulment of the marriage entered into in fulfillment of the promise, is a somewhat perplexing question. There is no evidence in the case that, in making and fulfilling this promise of marriage, the defendant Barker did not act in entire good faith, and without knowledge or notice of Conner's fraud on the bank. Furthermore, she was, of course, entirely within her rights in having the marriage annulled. Can she, however, retain the consideration for her promise after the marriage has been annulled at her suit? Although there was some conflict in the early authorities as to whether a marriage annulled became void only at the time of the decree of annulment, or whether it was void *ab initio*, it is now well settled that where a voidable marriage is annulled it is void *ab initio*, and the annulment has the same effect as if there had been no marriage. (*Matter of Moncrief*, 235 N. Y. 390, 397.)

The respondent attempts to draw a distinction between her promise to marry Conner and the marriage itself, and urges that the promise constitutes a sufficient consideration even though the marriage was later annulled on her application for Conner's fraud. In my opinion, no such distinction in principle exists. Clearly, a mere promise to marry, without fulfillment, would not constitute a good consideration for a conveyance of property. In other words, if the defendant Barker had promised to marry Conner, had received the property as a consideration for that promise, and had then repudiated her promise, it could not be successfully contended that the conveyance was supported by a sufficient consideration. It does not, however, necessarily follow that plaintiff may maintain this action merely upon the theory that, the consideration having failed, the property in question is Conner's and should be transferred to plaintiff to satisfy his debt to the bank. Probably, in view of Conner's fraud on the defendant Barker, upon which the marriage was annulled, an action on his part to recover the property would be barred, but the bank and plaintiff do not stand in his shoes. Plaintiff, as assignee of the bank, is a creditor of Conner, and may maintain a suit to avoid any transfer of property by him in fraud of creditors. If the effect of the annulment of the marriage is to make the transfer to the defendant Barker a

voluntary conveyance without consideration, it was, of course, fraudulent as a matter of law, irrespective of her good faith in the transaction.

In *Rubin* v. *Joseph* (215 App. Div. 91), decided by this court, plaintiff had executed to the defendant a bond and mortgage under an agreement that the mortgage was to be given in consideration that defendant would marry the plaintiff's daughter. The marriage was performed and the parties lived together for two years. It was then annulled on the ground of physical incapacity of the defendant and final judgment of annulment was entered. It was held that the final judgment in the annulment action was conclusive that the marriage was void *ab initio* and that the defendant never complied with his agreement and that the bond and mortgage should be canceled. The determination in that case depended upon the failure of consideration for the bond and mortgage resulting from the annulment of the marriage which rendered it void *ab initio*. In the case at bar there was a like failure of consideration for a like reason. The only distinction which can be made is that, in the case at bar, the defendant Barker made and fulfilled her promise of marriage to the defendant Conner and received the consideration therefor in good faith, and that the marriage was annulled for no fault of her own but for the fraud and deceit of Conner. But, in my opinion, this fact does not prevent the application of the principle laid down in *Rubin* v. *Joseph* (*supra*). Nothing compelled her to have the marriage annulled. She was free to continue as Conner's wife, and she, and she alone, could avoid it. Having taken the latter course, she must abide the result, and that result, in my opinion, is that this conveyance and transfer to her is in effect a voluntary conveyance and transfer without consideration and in fraud of Conner's creditor.

Respondent contends, however, that appellant cannot maintain a creditor's action because it has not exhausted its remedy at law by the recovery of judgment against Conner and the issue and return unsatisfied of an execution. Concededly this has not been done, nor has any reason for the neglect been pleaded or proved. The equitable principle thus invoked has long been well settled, and, unless it has been altered or modified by a recent statute, plaintiff is not in a position to maintain the action.

By chapter 254 of the Laws of 1925, which took effect on April 1, 1925, the Legislature enacted a new article to the Debtor and Creditor Law, known as article 10, sections 270–281, entitled "Fraudulent Conveyances," which is also known as the Uniform Fraudulent Conveyance Act. That statute was prepared by the

Commissioners for the Promotion of Uniformity of Legislation in the United States. Section 270 contains various definitions, among others the word " creditor," which is defined as " a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Section 271 defines insolvency. Section 272 defines fair consideration. Section 278 provides, among other things, that " Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or b. Disregard the conveyance and attach or levy execution upon the property conveyed." Section 279 relates to the rights of creditors whose claims have not matured, and provides, in substance, that where a conveyance is fraudulent as to such a creditor, he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may restrain the defendant from disposing of his property, appoint a receiver to take charge of it, set aside the conveyance or annul the obligation, or make any order which the circumstances of the case may require.

Many of the provisions of this statute are simply declaratory of common-law principles, and the only radical change in the law which seems to have been made is that a judgment and unsatisfied execution is no longer necessary in order to enable a creditor to maintain an action to annul a fraudulent conveyance. The statute does not, in express language, so provide, but the definition contained in section 270 (*supra*) of the word " creditor," as used in the statute, as being " a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent," the provision giving to such a creditor whose claim has matured the right to have a fraudulent conveyance set aside to the extent necessary to satisfy his claim (§ 278, *supra*), and the further provision giving to a creditor whose claim has not matured the right to invoke the aid of the court to set aside the fraudulent conveyance, indicate, in my opinion, that no judgment or execution is necessary to support the action, because, manifestly, a creditor with an unmatured claim is in no position to reduce the same to judgment and have execution thereon issued and returned unsatisfied.

There are few decisions construing this statute, and none by the

Court of Appeals. The only one which determines the question involved in this appeal is *Zimmerman* v. *Merriman* (130 Misc. 163), decided by the Special Term of Steuben county. In that case it was held that nothing in section 278 changed the rule, in actions of this sort, that, before equity can be invoked, it must be established that plaintiff has no adequate remedy at law and that relief will not be granted without a judgment or an attachment unless they be impossible of attainment. The court further said that subdivision b of section 278 provided an appropriate and complete legal remedy for plaintiff in that case. He might attach the real property if it was fraudulently conveyed although both its title and possession were in the grantee; that this was an adequate remedy at law, and that, until its inadequacy was established, plaintiff had no standing in equity; that it could not be urged that the granting of the two remedies provided in section 278, thereby giving a suitor a choice, operated to abrogate the familiar rule above mentioned and so long held to be essential to actions of this sort. In my opinion, the ruling made in the case last cited should not be followed. The learned court in that case seems to confine its construction of this statute to the language of section 278 alone, and has overlooked other provisions thereof referred to above.

Of course, the intention of the Legislature to alter or modify the pre-existing rule of law on a given subject must clearly appear from the language used in the statute claimed to have that effect. But this intention need not appear by express words. It is sufficient if it appears from the language used in the statute that no other purpose could have been intended. It might be urged that had it been the legislative intent to change the rule of law in the statute under consideration, it would have used clear and explicit language to express that intent, as it has in some other statutes relating to the same subject, *e. g.*, section 268 of the Real Property Law and section 19 of the Personal Property Law, in each of which it is provided that a creditor of a deceased insolvent debtor may maintain an action to set aside a fraudulent conveyance of the deceased debtor without obtaining a judgment on his claim, and may establish such claim if disputed in the action. But this conclusion does not necessarily follow. In the statutes last above mentioned, without express words giving the remedy provided to a creditor without judgment, such an intention would not appear, and it would follow, therefore, that the Legislature had no such intention. In the Uniform Fraudulent Conveyance Act, however, the language used, particularly that defining the word " creditor " as used in the act, and permitting such creditor whose claim had not matured to set

aside a fraudulent conveyance, is utterly repugnant to any intention save that of giving to such a creditor the relief provided in the act and of changing the former rule of law in this particular. Again, this is plainly a remedial statute, designed to furnish a creditor, as therein defined, full, complete and speedy relief against his fraudulent debtor. It should, therefore, receive a liberal construction by the courts in order to accomplish that purpose.

The progress of legislative action looking to relief of creditors has been of extremely slow growth; so slow, in fact, as often to render futile the creditor's theoretical remedy. It is not, in my opinion, too much to believe that the Legislature has finally recognized this evil and sought to remedy it by the statute under consideration. To give to that statute the effect that seems to me to be clearly intended, will not imperil any just rights of the debtor. It simply allows the creditor to establish his claim against the debtor, and have the fraudulent obstacle to its collection removed in a single action, instead of requiring two actions to accomplish the same result. What harm can ensue from such procedure, and what just rights of the debtor are jeopardized? I can see none. On the contrary, it avoids unnecessary delays, and assures a creditor speedy relief.

The complaint in the case at bar, however, is not framed on the theory that this is a creditor's action to avoid a fraudulent conveyance; but I do not see that this stands in the way of giving plaintiff the equitable relief to which, as is shown by the facts alleged and proved, it is entitled. All of the facts necessary to support an action under article 10 of the Debtor and Creditor Law (*supra*) are alleged and proved, and, being an equitable action, the court may adapt the relief to such facts.

The judgment should be reversed, with costs, and judgment directed in plaintiff's favor in conformity with this opinion.

RICH, SEEGER and SCUDDER, JJ., concur; LAZANSKY, P. J., not voting.

Judgment reversed upon the law and the facts, with costs, and judgment directed in plaintiff's favor setting aside the conveyance and transfer by the defendant Conner to the defendant Barker as fraudulent as against the creditors of the defendant Conner, with costs. Findings of fact and conclusions of law inconsistent with this decision are reversed and new findings and conclusions will be made in conformity herewith. Settle order on notice.