FANNIE LEIFER, Plaintiff, *v.* ROBERT MURPHY and Others, Defendants.

Supreme Court, Bronx County, November 15, 1933.

*Chambers & Chambers*, for the plaintiff.

*Solomon M. Chadabe*, for the defendants.

COLLINS, J. This case presents a striking example of the design and utility of article 10 of the Debtor and Creditor Law, governing fraudulent conveyances.

A judgment creditor, contending that certain conveyances are fraudulent, seeks to nullify them, and to reach the proceeds of the transfers.

The plaintiff judgment creditor sued the defendant judgment debtor, Robert Murphy, for personal injuries which the plaintiff sustained by Murphy's automobile on October 10, 1928. At that time Murphy had legal title to a home in which he lived. The property, assessed in 1929 for $15,500, was incumbered by two mortgages, the first for $7,500, and a second on which $1,500 was due. A week after the accident Murphy incorporated as Robert J. Murphy, Inc., and, as such, continued to conduct the contracting business theretofore operated by him. Murphy became president of the company, drawing a salary of $50 a week. Although his wife, the defendant Emma Murphy, became the corporation's treasurer and draws therefor $100 weekly, she had no experience in the contracting business and performs virtually no services. She does not even sign the company's checks; this is done by her husband. Several days subsequent to the incorporation of Murphy, Inc., Murphy executed a third mortgage on his already twice mortgaged home to the defendant Holmes for $8,500. Not only were Murphy and Holmes old friends, but Holmes was an employee of Murphy, Inc. Six thousand five hundred dollars of the $8,500 was paid to Murphy, Inc., for stock in that company, all of which was issued to the defendant Emma Murphy, and for which she parted with nothing.

On April 1, 1931, Robert Murphy deeded the property to Holmes, whereupon Holmes conveyed it to the Memur Realty Corporation, which was contemporaneously organized by Murphy's attorney to take title to the property, the attorney serving as secretary and treasurer, and his own secretary acting as president. All of Memur's stock was issued to Holmes in consideration for the transfer to it of the property theretofore owned by Murphy. Memur has engaged in no other transactions. It does not appear that Murphy had any other property.

Despite the deed, Murphy continued to occupy the house, without paying rent; as theretofore, he did pay the taxes and mortgage interest.

The incorporation of Memur, the deed from Murphy to Holmes, and the latter's conveyance to Memur, occurred about the time the plaintiff's personal injury action against Murphy was approaching trial. In that action the plaintiff recovered a judgment for $1,717; execution was issued and returned unsatisfied. The judgment remaining outstanding, this action was instituted against

Robert Murphy, Robert J. Murphy, Inc., Emma Murphy, James T. Holmes and the Memur Corporation for appropriate relief.

The above chronicle is established by uncontradicted evidence. The defendants rested thereon, insisting that it fails to sustain a *prima facie* case of transfer with intent to hinder, delay or defraud the plaintiff in the collection of her judgment, particularly that Murphy's insolvency was not shown to have resulted from the transfers.

The original demand for relief is affected by the foreclosure, at about the time of this trial, of the first and second mortgages. In her memorandum the plaintiff now concedes the validity of Murphy's mortgage and deed to Holmes, and the subsequent conveyance by Holmes to Memur.

That altered situation, however, does not leave the plaintiff stranded. The property belonged to Murphy. He testified in supplementary proceedings that his wife received the proceeds of the mortgage to Holmes, or its equivalent in stock. She paid absolutely nothing for it. No consideration, real or fanciful, passed. The manipulation stripped Murphy of all assets and rendered him execution proof. That the transaction was intended to and actually did hinder, delay and defraud the plaintiff, is self-evident.

When the third mortgage to Holmes was given, the plaintiff was a creditor of Murphy. Section 270 of the Debtor and Creditor Law defines a creditor as " a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. ' Debt ' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Clearly, then, an unliquidated *ex delicto* claim is a " debt " and the holder thereof is a " creditor " (*Gatto* v. *Boyd*, 137 Misc. 156), although the claim is not yet reduced to judgment (*American Surety Co.* v. *Conner*, 225 App. Div. 137, 142).

Under section 273 of the Debtor and Creditor Law, " Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Not only was a " fair consideration " absent here; *no* consideration passed. (*Gates & Co.* v. *B. N. Builders, Inc.*, 238 App. Div. 163, 165.)

Section 271 of the same law declares a person insolvent " when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The return of execution unsatisfied against Murphy was *prima facie* evidence of his insolvency, and the burden of going forward

to show that he retained sufficient other property to pay this then contingent unliquidated obligation, was upon him. (*Halsey* v. *Winant*, 233 App. Div. 103, 111; revd. on other grounds, 258 N. Y. 512; *Canaday* v. *Arch Amusement Co., Inc.*, 179 App. Div. 842, 843; *Cole* v. *Tyler*, 65 N. Y. 73, 78; *Ga Nun* v. *Palmer*, 216 id. 603, 611.) More, the record discloses that Murphy possessed no other property.

The statute which the plaintiff invokes is the Legislature's recognition of the myriad schemes resorted to by judgment debtors, potential and actual, to defeat the enforcement of judgments. It is a remedial statute " designed to furnish a creditor, as therein defined, full, complete and speedy relief against his fraudulent debtor. It should, therefore, receive a liberal construction by the courts in order to accomplish that purpose." (*American Surety Co.* v. *Conner, supra*).

Convinced that the challenge to the transaction should be sustained, the remaining question concerns the form and extent of the relief.

Under section 280 of the Debtor and Creditor Law: " In any case not provided for in this article the rules of law and equity including * * * the effect of fraud, misrepresentation * * * or other invalidating cause shall govern."

The power of equity is far-flung; no device to defraud is so circuitous that it can avoid pursuit by its searching principles. Equity will not allow itself to be outwitted or cheated, or to be frustrated or lost in mazes; it will go the lengths requisite to achieve results. It will penetrate the form and expose the substance. It discards the pretenses and deals with the realities. No masquerade is too subtle for detection by equity.

To summarize: The defendant Robert Murphy has made himself execution-proof. The plaintiff's present concession of the validity of the conveyances covering the real estate implies a request for the exoneration of the defendants Murphy, Inc., Holmes and Memur. This leaves the defendant Emma Murphy in the vulnerable position of having received money or its equivalent for which she admittedly gave nothing, and to which, had it gone to its rightful owner, her husband, the plaintiff might have had access.

Since Murphy's equity in the real property has been extinguished by the foreclosure of the first and second mortgages, setting aside the third mortgage and subsequent conveyances would avail the plaintiff nothing; her victory would be sterile. To announce that in this situation the plaintiff has no redress would confess the impotency of equity. Using a wife's name to defeat the rights of another will not be tolerated. The transaction was a " con-

veyance " within the purview of section 270 of the Debtor and Creditor Law. Among equity's manifold weapons is " the power to adapt its relief to the exigencies of the case." It " may award a personal judgment against a party in lieu of setting aside a transfer where the facts established such a personal liability." (*Halsey* v. *Winant, supra; Fox* v. *Erbe,* 100 App. Div. 343, 349; *Bailey* v. *Hornthal,* 154 N. Y. 648, 660, 661.)

Justice demands that the defendant Emma Murphy be disgorged of an amount of her gratuity sufficient to satisfy the plaintiff's judgment. Accordingly, judgment is rendered in favor of the plaintiff and against the defendant Emma Murphy for $1,717, with interest thereon from February 24, 1932. Submit findings.