In re CASEY.

No. 42737.

District Court, E. D. New York.

Nov. 29, 1944.

806

Freda Rosenblum, of White Plains, N. Y., Trustee in Bankruptcy (for the motion).

Lind & Marks, of New York City, for bankrupt (opposed).

BYERS, District Judge.

Hearing on trustee's petition to review decision of referee in bankruptcy dated August 11, 1944, granting discharge; it contains sixteen findings of fact, in part as requested by the decision of this court dated May 22, 1944, In re Casey, D.C., 55 F. Supp. 351.

No additional evidence was taken by the referee in reaching his said decision.

The material findings as paraphrased are:

(1) That the bankrupt's interest in the piano *at time of adjudication* consisted of an equity of about $92.00.

For reasons to be stated, this is not sustained by the evidence. At adjudication he had no such interest.

(3) That on or about December 25, 1941, he presented this piano to his wife and daughter as a Christmas gift.

(This is the transfer in question.)

(4) That the bankrupt was then indebted to but one creditor, the National City Bank.

(The total amount of the indebtedness at that time is not stated, but the bankrupt's schedules of April 27, 1942, show it to be $98.28; to this should be added four monthly payments of $16.00 each to establish the approximate amount due in December, 1941, or about $162.28 as the then total of that debt.)

(5) That there was no intention by the bankrupt to hinder, delay or defraud his creditors, by making this transfer.

(6) and (7) That the indebtedness for the unpaid balance of purchase price of the piano was listed in the bankrupt's schedules, but the creditor was not listed as a secured creditor.

Note: The listing was as follows:
"Gimbel Bros. (giving address)
"For goods sold and delivered—$217.82"

(8) and (9) That the bankrupt freely and fully disclosed all facts in connection with the purchase and transfer.

(This means that under examination by counsel for the trustee the facts were developed.)

(10) That the omission from the schedules of the piano (or the bankrupt's equity) has not resulted in "fraud of any creditor".

(11) That the financial condition of the bankrupt in December, 1941, is not material "to the determination of the issues under Section 14, sub. c(4) of the Act".

(This seems to require discussion.)

(12) and (13) Repetitions of (5).

(14) That the bankrupt's property in the piano at the time of transfer was an equity therein.

(15) That there was no knowing and fraudulent concealment from creditors (a) since there was no untruth in a material matter (i.e. failure to list the asset in schedules, or to disclose therein the said transfer) and (b) because the bankrupt "had fully disclosed all of the details of this transaction".

It will be seen that this case is not of significant dimensions, but it involves principles of bankruptcy law which cannot be ignored.

The discharge cannot be granted if the proof establishes that in December of 1941

(i.e. less than twelve months prior to April 27, 1942) the bankrupt transferred his equity in the piano to his wife and daughter, or concealed it by retaining it in himself "with intent to hinder, delay, or defraud his creditors". Section 14, sub. c(4), of the Act, 11 U.S.C.A. § 32, sub. c(4).

In 1914 it was written in Re Julius Bros., 217 F. 3, at page 7, L.R.A.1915C, 89:

"There are two classes of transfers under the act:

"(1) Those which have been entered into with actual fraudulent intent.

"(2) Those where, from the terms of the agreement or the nature of the transaction itself, the fraudulent intent is presumed to exist as an inference of law.

"In the one class the fraudulent intent is always a question of fact, and in the other it is a question of law. Thus if one who is insolvent makes a voluntary transfer of his property, receiving no valuable consideration therefor, the law will infer the intent, even though he may have made the transfer with an honest motive. In such cases no evidence of intention can be received to change that presumption. Such a conveyance necessarily operates to hinder, delay, or defraud the creditors, and the grantor will in such a case be presumed to intend the natural and necessary consequences of his acts."

The foregoing has been recognized in numerous cases as a correct statement of the law, even though it was not necessary to the decision of the issue presented in that case, which turned upon the effect to be given to a transfer within the then prohibited period, which had for its object a settlement with creditors ratably, outside of bankruptcy.

■ It does not lie with a District Court in this Circuit to say that the matter of possible insolvency at the time of transfer is not material to the question of whether the latter is to be deemed to have been made with intent to hinder, delay or defraud. Compare, for instance: In re Finder, 2 Cir., 61 F.2d 960, at page 961; In re Richter, 2 Cir., 57 F.2d 159 at page 160; In re Gurney, 2 Cir., 71 F.2d 144, at page 145; and In re Eric, D.C., 25 F.Supp. 211.

The financial condition of a bankrupt at the time of a transfer made within the critical period is of great practical significance in appraising the transaction in the legal sense; and this is true whether insolvency, if shown, be deemed conclusive as to intent, or merely evidence which tends strongly to indicate what the intent may be deemed to have been.

The transfer in this case was not of a kind or character which would apparently lend itself to unworthy guise, for it was not on the eve of bankruptcy nor of cash or such property as the creditors could expect readily to turn to account in reduction of their claims.

This court, however, cannot approve Finding (11) as the Bankruptcy Act has been thus far construed, and it will be set aside as clearly erroneous within General Order 47, 11 U.S.C.A. following section 53.

The referee has declined to make a Finding touching the solvency of the bankrupt on or about the date of the transfer, although requested to do so in the opinion of the court remitting the case to him, quoted on page 2 of his supplemental decision. It becomes necessary therefore to consider what the record shows on that subject.

It contains no evidence, apart from what the bankrupt said, as to his property and assets on the date of the transfer.

As to his debts at that time, it appears, as stated above, that he was indebted to the National City Bank in approximately the sum of $162.28. There is no testimony as to other indebtedness at that time.

The trustee urges that Lamica, the creditor who recovered his judgment about two weeks prior to the filing of the petition, and whose action had been pending for over a year in December of 1941, must be reckoned as a creditor during the latter month.

So much would be true in an action by a trustee to set aside a conveyance as fraudulent as against creditors under Article 10 of the Debtor and Creditor Law of the State of New York, Consol. Laws N.Y. c. 12. See Macken v. Gass, D.C., 23 F.Supp. 320; Leifer v. Murphy, 149 Misc. 455, 267 N.Y.S. 701.

■ There is no such action pending, and the present inquiry is confined to the question of the bankrupt's solvency in December of 1941, to the extent that it might illumine the intent to be attributed to him in connection with the said transfer. No case has been found by the court which would classify Lamica as a creditor during December of 1941 for the purpose of determining the bankrupt's solvency during that month. It is thought that there is a justifiable distinction to be drawn between Lamica's then status for the purpose of an

action brought pursuant to the provisions of the Debtor and Creditor Law of New York on the one hand; and on the other, to enable the court to inquire into the bankrupt's solvency when the transfer in question was made.

As to the latter, he was at most a creditor having an unliquidated claim ex delicto, and the extent thereof could not be known in order to establish the bankruptcy test of solvency.

If the foregoing is correctly reasoned, it follows that a reading of the testimony of the bankrupt, which is not questioned by the trustee, is consistent with the view that insolvency has not been shown at the time of the transfer.

The bankrupt was not in business for himself, his employment being upon a salary for promotional purposes. Probably his resources were equal to his debt to the National City Bank, and in the absence of evidence to the contrary it may be safely assumed that he was not otherwise indebted.

█ Under the entire showing it cannot be said that the referee was not justified in finding that the transfer in question was not with the intent to hinder, delay or defraud his creditors. Thus Finding (13) is sustained.

█ The first specification alleges the making of a false oath to his schedules, in failing to disclose his ownership of the piano. Since the transfer in December of 1941 is held to have been free from the taint of Section 14c(4), ownership had departed from him, and thus the bankrupt cannot be said to have made a false oath in that respect. Finding (10), which has been quoted, can thus be sustained in substance.

The second specification, addressed to the said transfer, has not been sustained, as has been stated.

The third specification alleges concealment of the bankrupt's property in the piano. That necessarily falls with the finding that the transfer was not within the inhibition of the statute. So much of Finding (15) as states that there was no concealment is sustained.

█ With respect to Findings (8) and (9), it is to be observed that, in the bankrupt's statement of affairs attached to his schedules, in answer to Paragraph 10— "Transfer of Property"—the word "None"

appears. The disclosure therefore was not made until the trustee's attorney brought the facts to light by appropriate examination at the hearing. Those Findings do not affect the result, but are open to serious question. It may be that the misstatement accompanying the schedules was due to the bankrupt's failure to take his own lawyer fully into his confidence, or perhaps the legal significance of Question 10 was not understood by the bankrupt. Whatever the fact may have been, there was no such disclosure in the schedules as they were designed to accomplish.

Upon the case as a whole, it appears that the trustee's petition to review should be denied.

Settle order.