| **Estate of Leon Tawil v Sutton** |
|:---:|
| 2024 NY Slip Op 30575(U) |
| February 23, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 527569/2023 |
| Judge: Leon Ruchelsman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: COMMERCIAL 8
----------------------------------------------x
ESTATE OF LEON TAWIL,

                          Plaintiff,      Decision and order

        - against -             Index No. 527569/2023

MEIR SUTTON, ISAAC SUTTON, ABRAHAM
DUSHEY, and 1580 EAST 5TH LLC,
                       Defendants,      February 23, 2024
----------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN        Motion Seq. #1 & #2

      The defendants have moved and cross-moved seeking to dismiss

the complaint pursuant to CPLR §3211 on the grounds it fails to

allege any causes of action. The plaintiff opposes the motion.

Papers were submitted by the parties and arguments held. After

reviewing all the arguments this court now makes the following

determination.

      On February 9, 2016 Abraham Dushey obtained a judgement

against Isaac Sutton in the amount of $741,287.20. To satisfy

the judgement, on September 27, 2017 Isaac sold property located

at 1580 East 5th Street in Kings County to Dushey. The purchase

price was agreed upon as $1,650,000 and the property was sold for

$919,119.47 which included a satisfaction of the amount Sutton

owed Dushey satisfying the judgement. On May 7, 2020 Dushey sold

the property to Isaac's son Meir, the defendant in this action,

through an entity called 1580 East 5th LLC for $1,700,000. That

amount was based upon an appraisal conducted by Wells Fargo Bank

which loaned eighty percent of the purchase price and then

[* 1]

obtained a mortgage on the property.

The plaintiff has now instituted the within lawsuit. The plaintiff, the estate of Leon Tawil, obtained a judgement against Isaac Sutton on June 29, 2022 in the amount of $3,254,537.40 which remains unsatisfied. That judgement was the result of a lawsuit commenced in 2015. The complaint alleges that the sale between Dushey and Meir Sutton was made to help Isaac avoid paying its judgement to the plaintiff. The complaint alleges three causes of action pursuant to the Debtor Creditor Law (§§273, 275, 276 and 278). The defendants, the Suttons and Dushey have moved seeking to dismiss the lawsuit on the grounds it fails to allege any valid causes of action. As noted, the motions have been opposed.

### Conclusions of Law

It is well settled that upon a motion to dismiss the court must determine, accepting the allegations of the complaint as true, whether the party can succeed upon any reasonable view of those facts (Perez v. Y & M Transportation Corporation, 219 AD3d 1449, 196 NYS3d 145 [2d Dept., 2023]). Further, all the allegations in the complaint are deemed true and all reasonable inferences may be drawn in favor of the plaintiff (Archival Inc., v. 177 Realty Corp., 220 AD3d 909, 198 NYS2d 567 [2d Dept., 2023]). Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be

[*2]

able to prove its claims, of course, plays no part in the determination of a pre-discovery CPLR §3211 motion to dismiss (see, Lam v. Weiss, 219 AD3d 713, 195 NYS3d 488 [2d Dept., 2023]).

Pursuant to §273 of the Debtor Creditor Law every conveyance made by a party which then renders the party insolvent is fraudulent without regard to intent if the conveyance is made without fair consideration (Paragon v. Paragon, 164 AD3d 1460, 84 NYS3d 582 [2d Dept., 2018]). Further, such transfers are fraudulent if the transferor intended or believed the transferor would incur debts beyond his or her ability to pay them when they matured (Debtor Creditor Law §275) or even if fair consideration was present the transfer was made with the intent to defraud (Debtor Creditor Law §276). Pursuant to Debtor Creditor Law §278 any creditor may have fraudulent conveyances set aside except against any good faith purchaser for value, which is defined as any person who tendered fair consideration without knowledge of any fraud (see, Commodity Futures Trading Commission v. Walsh, 17 NY3d 162, 927 NYS2d 821 [2011]).

The plaintiff has only opposed the motion seeking to dismiss Debtor Creditor Law §276 and Debtor Creditor Law §278. Thus, the motion seeking to dismiss any claims based upon Debtor Creditor Law §273 and Debtor Creditor Law §275 is granted.

The fraudulent transfer law contained within the Debtor

3

Creditor Law is designed to prevent debtors from avoiding the payment of their debts (Leifer v. Murphy, 149 Misc 455, 267 NYS 701 [Supreme Court Bronx County 1933]). Debtor Creditor Law former §276 states that "every conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent" (id). Thus, a creditor must demonstrate, by clear and convincing evidence that a defendant had the actual intent to hinder, delay or defraud creditors (see, Jensen v. Jensen, 256 AD2d 1162, 682 NYS2d 774 [2d Dept., 1998]). Since fraudulent or improper intent is difficult to prove, courts have developed 'badges of fraud' which can give rise to intent. Badges of fraud include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance" (Goldenberg v. Friedman, 191 AD3d 641, 141 NYS3d 111 [2d Dept., 2021]).

In this case, as noted, the plaintiff first became a creditor of Isaac on June 29, 2022 when a jury awarded the plaintiff a judgement against Isaac in the amount of $3254,547.40.

There are three overlapping reasons the plaintiff cannot maintain any fraudulent conveyance claims against the defendants.

4

[* 4]

First, the two transfers, from Isaac to Dushey and then Dushey to Meir all concluded two years before the plaintiff obtained any judgement. In fact, the transfer from Isaac to Dushey occurred almost five years before the judgement was obtained. It is true that a fraudulent conveyance can be found even where the debt was not in existence at the time of the conveyance. However, all cases that have relied on that proposition concerned events far closer in time. In Nonas v. Romantini, 271 AD2d 292, 706 NYS2d 109 [1st Dept., 2000] the court found a fraudulent conveyance could exist because when the conveyance was made "there were ample indications that such obligation was being discussed at or about the time of such transfer" (id). In First Keystone Consultants Inc., v.Schlesinger Electrical Contractors Inc., 871 F.Supp2d 103 [E.D.N.Y. 2012] the court held conveyances could be fraudulent when they were made within weeks of arbitration appearances and arbitration rulings against an entity, KFC, that was the subject of those arbitrations. The court concluded that "the timing and circumstances of these transactions constitute clear and convincing evidence that FKC acted with intent to defraud its creditors" (id). Similarly, In Cathay Bank v. Bonilla, 2023 WL 6812274 [E.D.N.Y. 2023] the court found a fraudulent conveyance existed, when among other factors, a transfer took place one month after the transferor was named in a lawsuit.

5

[*5]

In this case, although Isaac was aware of a lawsuit filed in 2015, the transfers took place in 2017 and 2022. A mere lawsuit filed, the merits of which required a jury determination years later, cannot support a finding the transfers were fraudulent. Moreover, this reality, without any other factors is insufficient to establish a fraudulent transfer.

In truth, as noted, this argument is really one factor when assessing whether badges of fraud exist. Indeed, Federal courts include additional factors that can be utilized to evaluate whether badges of fraud support the intent necessary to establish a fraudulent conveyance, including "the general chronology of the events and transactions under inquiry" (see, Kim v. Ji Sung Yoo, 311 F.Supp3d 598 [S.D.N.Y. 2018]). That additional factor is not found in any appellate decision in New York but is found in lower court decisions (see, Nixon v. Jackson, 2009 WL 1574117 [Supreme Court Nassau County 2009] and ATSCO LTD. et al v. Haryati Zainudin Swanson, 2004 WL 5329667 [Supreme Court New York County 2004]). The allusion to this additional factor in Nonas (supra) and the strength or weakness of its relevance demands its consideration along with an examination of all the badges of fraud.

Second, evaluating the badges of fraud necessary demonstrates that plaintiff has not adequately pled intent of a fraudulent conveyance. The plaintiff asserts the two

6

[* 6]

transactions must be viewed as one composite transaction. The court will address that argument, however, to maintain a fraudulent conveyance action premised on badges of fraud, requires, first, a close relationship between the parties to the alleged fraudulent transaction. The two transactions involve Isaac and Dushey and Dushey and Meir. While Isaac and Meir, as father and son, obviously maintain a close relationship, there is no such relationship with Dushey. The complaint states that Isaac and Dushey were friends for twenty years (Complaint, ¶4 [NYSCEF Doc. No. 8]). However, Dushey sued Isaac and obtained a judgement against him in an action in Kings County entitled *Abraham Dushey, et al. v. Isaac Sutton*, Index No. 51025/2015 and secured a judgement against Isaac for $741,287.00. Thus, the sort of "close" relationship required to maintain a fraudulent conveyance action premised on badges of fraud does not exist here.

Next, plaintiff does not allege facts sufficient to suggest that the transactions were questionable transfers not in the usual course of business. For example, "a corporation does not usually transfer money to, or for the benefit of, people who provide no consideration. Nor does a corporation properly prepare and file W-2 forms for people who are not employed by the corporation" (see, Federal National Mortgage Association v. Olympia Mortgage Corporation, 792 F.Supp2d 645 [E.D.N.Y. 2011]).

7

[* 7]

Moreover, a transaction made with an unusual amount of secrecy or made with efforts to conceal the transaction from others including debtors principles are further indications the transaction was not made in the ordinary course of business (In re 45 John Lofts LLC, 650 BR 602 [United States Bankruptcy Court Southern District of New York 2023]).

The first transfer was made to satisfy a debt and can hardly be classified as improper in any way. There is also no indicia that Isaac preferred certain creditors to the detriment of the plaintiff and that such preference constitutes fraud (see, Priestly v. Panmedix Inc., 18 F.Supp3d 486 [S.D.N.Y. 2014]). At the time of the conveyance, Dushey had a judgement against Isaac and plaintiff did not. There can be no fraudulent preferences paying the debt owed to Dushey thereby frustrating the plaintiff's claim that would not ripen for five years. The unpredictability of that claim, in 2017, negates any assertions the transfer to Dushey somehow consisted of any improper preference (see, In re Sharp International Corp., 403 F3d 43 [2d Cir. 2005]). The second transfer did not involve Isaac the debtor and in isolation was not done in any unusual manner to raise any badge of fraud at all. The transfer was for full consideration, was made with a publicly recognized bank as mortgagee and was not done secretly or hastily. The fact the property may not have been publicly available to other potential

8

purchasers does not mean the conveyance was fraudulent in any manner.

Next, inadequacy of the consideration is considered a "particularly important" badge establishing a fraudulent conveyance (Axginc Corporation v. Plaza Automall Ltd., 2022 WL 2135474 [E.D.N.Y. 2022]). While the plaintiff acknowledges that inadequacy of consideration is a badge of fraud necessary to establish intent (see, Memorandum of Law in Opposition, page 7 [NYSCEF Doc. No. 65]) the plaintiff argues that inadequacy of consideration is not necessary to establish a claim pursuant to Debtor Creditor Law former §276. It is true that where actual intent to defraud has been proven then the adequacy of consideration is not relevant to set aside the conveyance (see, In re Sharp International Corp., supra). However, where there is no indicia of actual intent and instead the plaintiff seeks to establish fraud by reliance upon badges of fraud then surely the inadequacy of consideration is a factor that must be considered (see, Wall Street Associates v. Brodsky, 257 AD2d 526, 684 NYS2d 244 [1st Dept., 1999]) In Wall Street, the court explained that "DCL § 276, unlike sections 273 and 275, addresses actual fraud, as opposed to constructive fraud, and does not require proof of unfair consideration or insolvency...Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on "badges of fraud" to support his

9

case, i.e., circumstances so commonly associated with fraudulent transfers "that their presence gives rise to an inference of intent"...Among such circumstances are: a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance" (id).

The adequacy of consideration concerning the transfers in this case is apparent. Indeed, the plaintiff does not even question their adequacy other than to note the second transaction was not arms-length because the price was virtually the same as the 2017 transfer and the property was not listed for sale on the open market. However, those factors do not impugn adequate consideration at all. In any event, those objections are equally unavailing and fail to raise any question of fraud. While the two transfers, three years apart, were for almost identical prices, that does not evince any question of fraud. This is particularly true where there is no question fair consideration was exchanged and Wells Fargo Bank provided an appraisal and obtained a mortgage in the second transaction. Any question in this regard is sheer speculation. Moreover, the fact the property may not have been offered to sale to others does not

undermine the adequacy of consideration. That is an irrelevant fact that has no bearing upon this litigation.

The next badge of fraud is the transferor's knowledge of the creditor's claim and the inability to pay it. This badge is entirely absent in these transactions and to be sure the badge makes little sense considering the specifics facts. Dushey as one of the transferors was never a debtor and whether Dushey knew of Isaac's debts is entirely irrelevant. As the court observed in In re Tribune Co. Fraudulent Conveyance Litigation, 2017 WL 82391 [S.D.N.Y. 2017] "when considering whether a debtor had an actual intent to hinder, delay, or defraud its creditors, courts focus on the intent of the transferor not on the intent of the transferee" (id). Thus, the intent of Dushey or Meir as transferees is entirely irrelevant.

The last badge of fraud demonstrating intent recited by New York cases is whether there is any retention of control of the property by the transferor after the conveyance. In this case that badge of fraud is not even asserted. There is no dispute that after Isaac transferred the property to Dushey he did not maintain any retention or control over the property. Likewise, upon Dushey's sale of the property to Meir, again, Isaac retained no control over the property.

As noted, the Federal courts include further badges of fraud, namely, the financial condition of the party sought to be

11

[*11]

charged both before and after the transaction in question, the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors and the general chronology of the events and transactions under inquiry (see, Emerson Electric Company v. Asset Management Associates of New York, 2023 WL 4850528 [E.D.N.Y. 2023]). These badges of fraud are also absent in this case.

The financial condition of the party sought to be charged, Isaac in this case, is similar to the transferor's knowledge of the creditor's claim and the inability to pay it. That badge has adequately been discussed. The next badge, a series of transactions will be dealt with presently regarding the collapsing doctrine. The last badge, the chronology of events surely provides no indicia that any intent existed to fraudulently convey the property. As already explained, a lawsuit was commenced against Isaac in 2015. In 2016 Dushey obtained a judgement against Isaac. As a result of that judgement Isaac sold his property to Dushey to satisfy the debt that arose from the 2016 lawsuit. The further transaction from Dushey to Meir in 2020 did not involve Isaac at all and the chronology of these events does not serve to indicate any fraud. The mere fact the 2015 lawsuit was concluded with a judgement

12

against Isaac in 2022, a full two years after the property was sold to Meir fails to allege any fraudulent conveyances in any manner. Thus, considering all the badges of fraud, the only one that could possibly be utilized to infer fraudulent intent is the fact Isaac and Meir are related to each other. However, that one possible badge is entirely inadequate. As the court observed in In re Tops Holding II Corporation, 646 BR 617 [United States Bankruptcy Court Southern District of New York 2022] "the presence or absence of any single badge of fraud is not conclusive. The proper inquiry is whether the badges of fraud are present, not whether some facts are absent. Although the presence of a single factor, i.e. a badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud" (id). Thus, when no badges of fraud are found no such intent to engage in any fraudulent conveyance has been presented.

Lastly, the plaintiff asserts the collapsing doctrine can enable both transactions to be viewed as one overall transaction wherein Isaac really transferred the property to his son establishing a fraudulent conveyance.

This doctrine permits multiple transactions to be viewed as steps in a single transaction when analyzing a fraudulent conveyance allegation (HBE Leasing Corporation v. Frank, 48 F3d

13

[*13]

623 [2d Cir. 1995]). For example in HBE the court explained the doctrine would apply where "one transferee gives fair value to the debtor in exchange for the debtors property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtors property, and the second transferee receives the consideration, while the debtor retains nothing" (id). Thus, for this doctrine to apply the party seeking its applicability must demonstrate that the consideration the debtor gave the first transferee was then reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors. However, if the debtor does not transfer the consideration but rather keeps it then the first transfer is not fraudulent. Further, "the initial transferee must have actual or constructive knowledge of the entire scheme that renders the exchange with the debtor fraudulent" (see, In re M. Fabrikant & Sons Inc., 394 BR 721 [United States Bankruptcy Court Southern District of New York 2008]).

In this case none of the elements of the collapsing doctrine are present. First, the debtor did not gratuitously transfer the proceeds to any third party. Rather, some of the proceeds were used to satisfy a debt owed to Dushey and the remainder of the proceeds were retained by Isaac. Second, there is no allegation that Dushey, the initial transferee, had any knowledge of any

14

scheme to defraud the plaintiff. Nor could Dushey possibly have any such knowledge of any intent to defraud Isaac since no judgement had even been obtained and thus there was no fraudulent activity. Essentially, the plaintiff argues that in 2017 Isaac thought that perhaps he may owe the plaintiff money due to a lawsuit commenced two years earlier and embarked upon a scheme. Pursuant to this scheme Isaac would sell property to Dushey (to satisfy a debt) then wait three years and allow Dushey to sell the property to his son Meir for full value believing that at some future point he may lose the lawsuit to the plaintiff. Even if all those facts are true that does not allege any fraudulent conveyance for the reasons explained. Therefore, the motion seeking to dismiss all causes of action pursuant to Debtor Creditor Law §276 is granted. Consequently, there can be no claims against Meir pursuant to Debtor Creditor Law §278 and the motion seeking to dismiss all those claims is likewise granted. Thus, the motions seeking to dismiss the entire complaint is fully granted.

    So ordered.

ENTER:

DATED: February 23, 2024
      Brooklyn N.Y.

_____
Hon. Leon Ruchelsman
JSC

15